UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARL SHUPE, individually and
on behalf of all others similarly situated,

        Plaintiffs,

v.

ROCKET COMPANIES, INC., JAY FARNER,
JULIE BOOTH, ROBERT WALTERS, and
DANIEL GILBERT,

        Defendants.
_____/

Case No. 1:21-cv-11528

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**

Five groups of plaintiffs have brought class-action complaints against Rocket Companies, Inc. and some of its officers and directors. The plaintiffs allege, on behalf of themselves and all others similarly situated, that the defendants artificially inflated the price of Rocket Class A common stock between February 25, 2021 and May 5, 2021, by misrepresenting or omitting numerous adverse facts in a post-IPO press release announcing the Company's financial results, which violated §10(b) and § 20(a) of the Securities Exchange Act.

The Securities Exchange Act creates a rebuttable presumption that the plaintiff who has suffered the largest alleged loss is presumptively the most adequate plaintiff to represent the class—the "lead plaintiff." Each of the five plaintiff groups argue that they are the most adequate plaintiff, but only one group can be chosen. The lead plaintiff chooses the lead counsel.

Carl Shupe is the most adequate plaintiff to represent the *Rocket* Class. No other plaintiff group has rebutted that presumption. Therefore, Shupe shall be the lead plaintiff and Labaton Shucharow LLP shall be the lead counsel of the *Rocket* Class.

### I.

In June 2021, Plaintiff Zoya Qaiyum[1] brought this securities class action, individually and on behalf of all others similarly situated, against Defendants Rocket Companies, Inc. and some of its senior officers and directors: Jay Farner, Julie Booth, Robert Walters, and Daniel Gilbert. ECF No. 1. Plaintiff's Complaint alleges that Defendants violated 15 U.S.C. §§ 78j(b), t(a) and 17 C.F.R. § 240.10b-5. *Id.* The next month, under § 455, District Judge Paul Borman recused himself from the case, which was then randomly reassigned to District Judge Judith Levy. ECF No. 4.

In August 2021, six plaintiffs from later-filed Case No. 5:21-cv-11618 filed five motions to consolidate that case with this case, as well as to be appointed as the lead or co-lead plaintiff under 15 U.S.C. § 78u–4(a)(3)(B)(i), as amended by the Private Securities Litigation Reform Act of 1995 (PSLRA). *See* ECF Nos. 10 (Plaintiff Eric Asnara); 13 (Plaintiffs Richard Crosby Elwell and Dennis R. Tragesser); 14 (Plaintiff Richard Batson); 15 (Plaintiff Carl Shupe); 16 (Plaintiff Lang Lee).

In April 2022, Judge Levy consolidated the cases under Federal Rule of Civil Procedure 42(a)(2), but she did not determine which Plaintiff should be the lead plaintiff under the PSLRA. *See* ECF Nos. 30; 31. Two days later, the case was reassigned to the undersigned.

This Order will address the five partially resolved motions and determine the lead plaintiff and lead counsel of this consolidated case.

---

[1] On May 3, 2022, Zoya Qaiyum filed a notice of voluntary dismissal of her complaint. ECF No. 32. The case caption has since been changed to reflect the disposition of this Opinion and Order. *See* ECF No. 33.

## II.

### A.

The PSLRA altered the procedure by which courts appoint the lead plaintiff for a purported class. Section 78u–4(a)(3)(B)(i) provides:

> Not later than 90 days after the date on which a notice is published . . . the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u–4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the person who "has either filed the complaint or made a motion in response to a notice under [15 U.S.C. § 78u–4(a)(3)(A)(i)]," "has the largest financial interest in the relief sought," and "otherwise satisfies the requirements of Rule 23." *Id.* §§ 78u–4(a)(3)(B)(iii)(I)(aa), (bb), (cc).

Any member of the purported plaintiff class may rebut the presumption upon proof "that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class[] or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* §§ 78u–4(a)(3)(B)(iii)(II)(aa), (bb). Purported class members may undertake discovery to mount such a challenge only if they "first demonstrate[] a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iv).

Once the court has appointed the lead plaintiff, the PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain lead counsel." *Id.* § 78u–4(a)(3)(B)(v).

**B.**

The PSLRA does not provide a methodology for determining which person has "the largest financial interest" in the litigation. In making that determination, however, courts have generally adopted the four factors outlined in *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y.), *aff'd on recons. sub nom. In re Olsten Corp.*, 181 F.R.D. 218 (E.D.N.Y. 1998); *see also In re The Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943, at *3 (N.D. Ohio May 12, 2004) (collecting cases).

The *Lax* factors are:

(1) the number of shares purchased during the class period;
(2) the number of net shares purchased during the class period (i.e., shares purchased during and retained at the end of the class period);
(3) the total net funds expended during the class period; and
(4) the approximate losses suffered during the class period.

*Lax*, 1997 WL 461036, at *5.

With respect to the last factor, courts may choose any "rational and consistently applied" method to calculate the losses that class members suffered during the class period. *In re Regions Morgan Keegan Closed–End Fund Litig.*, No. 07–02830, 2010 WL 5173851, at *4 (W.D. Tenn. Dec. 5, 2010) (first citing *Plumbers & Pipefitters Loc. 562 v. MGIC Inv. Corp.*, 256 F.R.D. 620, 623–24 (E.D. Wis. 2009); and then citing *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002)). "[T]here does not appear to be any consensus among courts as to which method is best." *Plumbers & Pipefitters*, 256 F.R.D. at 623 & n.4 (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 31.31 (2004)). But "most courts . . . consider only those securities affected by the defendant's alleged misconduct." *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *3 (E.D. Mich. Oct. 24, 2014) (collecting cases).

Finally, as indicated, the class member seeking to be the lead plaintiff must also satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). In deciding who to appoint as the lead plaintiff, courts focus on the third and fourth factors, delaying a more rigorous analysis of the first two factors for deciding whether to certify the matter as a class action. *See, e.g.*, *Goodyear Tire*, 2004 WL 3314943, at *6 (collecting cases); *Lax*, 1997 WL 461036, at *6 (citation omitted).

Rule 23's "typicality" requirement is met if the lead plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Typicality ensures that the class representative's interest advance the interests of the other members of the class. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc). Typicality is very easy to demonstrate. Robert H. Klonoff, *Class Actions in the Year 2026: A Prognosis*, 65 EMORY L.J. 1569, 1614–15 (2016) (noting that "many more [cases] can be found in which the typicality requirement was satisfied" than those in which it was not).

Rule 23's "adequacy" requirement is satisfied if the representative (1) "ha[s] common interests with those of unnamed class representatives" and (2) is "capable of vigorously prosecuting the action with the assistance of qualified counsel." *Id.* The first criterion overlaps the typicality and commonality requirements. *Am. Med. Sys., Inc.*, 75 F.3d at 1083. The second

criterion "raises concerns about the competency of class counsel." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

### III.

The following table represents the parties' interests as pleaded:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Losses Suffered |
|---|---|---|---|---|
| Ansara | 7,000 | 7,000 | 189,000 | 63,000 |
| Elwell/Tragesser | Unknown | Unknown | Unknown | 523,372.59 |
| Batson | 42,010 | Unknown | Unknown | 117,674 |
| Shupe | 27,150 | 27,150 | 936,371.18 | 434,026.12 |
| Lee | 551,423 | 23,488 | 16,212,140 | 228,815 |

ECF Nos. 10-1 at PageID.78–79; 13 at PageID.186; 14 at PageID.305; 15 at PageID.493; 16 at PageID.570.

### A.

Although some courts rely solely on the "losses suffered," "the first three factors provide the most objective measurement of a movant's stake in the litigation because [losses suffered] is heavily dependent on the method applied and numbers chosen to calculate losses." *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014). Indeed, some courts have found the second factor—retained shares—to be the most determinative factor in approximating an investor's potential recovery. *See, e.g.*, *In re Network Assocs., Inc. Sec. Litig.*, 76 F.Supp.2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1108 (N.D. Cal. 2001) (finding that the net shares purchased were "determinative" of financial interest); *In re Cable & Wireless PLC Sec. Litig.*, 217 F.R.D. 372, 375 n. 4 (E.D. Va. Apr. 21, 2003) (appointing the movant with largest net funds expended).

The Elwell/Tragesser Group has not stated—either collectively or individually—the number of shares it purchased, its net shares purchased, or its net funds expended. *See generally* ECF No. 13. Accordingly, this Court cannot determine the reliability of the Elwell/Tragresser Group's losses-suffered calculation, which is how the *Lax* court made its final determination. *See Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Given this absence of information,[2] the Elwell/Tragresser Group will not be chosen as the lead plaintiff.

The Shupe Group has the largest financial interest in this litigation. Although the Lee Group purchased 551,423 shares and suffered losses of $228,815 during the relevant period, ECF No. 16 at PageID.570, it sold nearly 96% of its holdings during the class period at prices that were inflated by the alleged fraud, *see id.*, "which would presumably diminish [its] actual losses." *Lax*, 1997 WL 461036, at *5. By contrast, the Shupe Group has the largest net shares purchased and did not sell any of its shares. *See* ECF No. 15 at PageID.493. Thus, the Shupe Group "has the largest financial interest in this litigation," because it has "suffered the largest alleged losses." *Lax*, 1997 WL 461036, at *5; *see also* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

**B.**

The PSLRA requires the lead plaintiff to "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "At this stage of the

---

[2] The Elwell/Tragresser Group has attached exhibits that seem to indicate the relevant values of its purported class members. *See* ECF No. 13-2 at PageID.205; 13-3 at PageID.207–10. But the Elwell/Tragresser Group has provided no explanation of how to read those documents or the relevant values to be derived from them. *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *7 (E.D. Mich. Oct. 24, 2014) ("The narrow window Congress provided district courts to resolve competing motions for lead plaintiff appointment is not the time for conducting a precise calculation of each movant's actual damages, which in a securities fraud case generally 'is a highly technical task that usually involves a battle of experts.'" (citations omitted)).

litigation, however, 'all that is required is a 'preliminary showing that the lead plaintiff's claims are typical and adequate [of the class].'" *Ruckel v. Ford Motor Co.*, No. 17-CV-13536, 2018 WL 783534, at *2 (E.D. Mich. Feb. 7, 2018) (citation omitted). Shupe satisfies the typicality and adequacy requirements of Rule 23.

Shupe's claims are typical of the claims asserted by the proposed Class. "Rule 23's 'typicality' requirement is met if the plaintiff's claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Here, like all members of the Class, Shupe alleges that "Defendants made material misstatements and omissions regarding the Company's business, operations, and prospects." *Compare* ECF No. 1 at PageID.10–18, *with* ECF No. 15 at PageID.494. Shupe, as did all the members of the Class, purchased Rocket Class A common stock in reliance on Defendants' alleged misstatements and omissions and was damaged as a result. *Compare* ECF No. 1 at PageID.3, *with* ECF No. 15 at PageID.494. Accordingly, because Shupe's claims arise out of the same course of events and relies on the same legal theories as do the claims of other Class members, the typicality requirement is satisfied.

Shupe likewise satisfies the adequacy requirement of Rule 23. "The . . . 'adequacy' requirement is satisfied whe[n] the representative 'ha[s] common interests with those of unnamed class representatives' and is 'capable of vigorously prosecuting the action with the assistance of qualified counsel.'" *Gen. Motors Co.*, 2014 WL 5421230, at *4 (quoting *Am. Med. Sys.*, 75 F.3d at 1082). As applied, Shupe will fairly and adequately represent the interests of the proposed Class. Indeed, "unlike investors with a nominal financial interest in the class action," Shupe has "the

incentive to monitor the litigation, control lead counsel, and police any proposed settlement." *Ford Motor Co.*, 2018 WL 783534, at *3. Moreover, Shupe has also retained counsel that is highly experienced in prosecuting securities class actions vigorously and efficiently, *see* ECF No. 15 at PageID.495–96, and timely submitted his choice to this Court for approval in accordance with the PSLRA, *see* 15 U.S.C. §§ 78u–4(a)(3)(A)(i)(II), (B)(v). Thus, Shupe has demonstrated the sophistication, resources, and experience necessary to pursue the case to a successful conclusion through the effective oversight of counsel. Finally, there is no proof that Shupe is "subject to unique defenses that render him incapable of representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Accordingly, Shupe satisfies the adequacy requirement.

### C.

Because Shupe satisfies the typicality and adequacy requirements of Rule 23, he is presumed to be the most adequate plaintiff to serve as the lead plaintiff. Although the presumption is rebuttable, this Court has not been presented with evidence or arguments suggesting that Shupe "will not fairly and adequately protect the interests of the class . . . [or] is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. §§ 78u–4(a)(3)(B)(iii)(II)(aa), (bb).

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(iv). Shupe has selected Labaton Sucharow LLP as his counsel. ECF No. 15 at PageID.495–96. Shupe's briefing demonstrates that his chosen counsel is "competent, experienced, and qualified to represent the interests of the plaintiff class." *Pio v. Gen. Motors Co.*, No. CIV. 14-11191, 2014 WL 5421230, at *8 (E.D. Mich. Oct. 24, 2014).

For these reasons, Shupe's Motion to Appoint as Lead Plaintiff will be granted, Shupe will be appointed as the lead plaintiff, and Labaton Shucharow LLP will be the lead counsel. The other four motions to appoint will be denied.

### IV.

Accordingly, it is **ORDERED** that Carl Shupe's Motion to Appoint, ECF No. 15, is **GRANTED**.

Further, it is **ORDERED** that the four other Motions to Appoint, ECF Nos. 10; 13; 14; 16, are **DENIED**.

Further, it is **ORDERED** that Carl Shupe is **APPOINTED** as lead plaintiff of the *Rocket* Class.

Further, it is **ORDERED** that Labaton Shucharow LLP is **APPOINTED** as lead counsel of the *Rocket* Class.

Dated: May 5, 2022

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge