IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

CARL SHUPE and CONSTRUCTION LABORERS
PENSION TRUST FOR SOUTHERN CALIFORNIA,
Individually and on Behalf of All Others
Similarly Situated,

     Plaintiffs,

v.

ROCKET COMPANIES, INC., JAY D. FARNER,
DANIEL GILBERT and ROCK HOLDINGS INC.,

     Defendants.

No. 21-cv-11528

Honorable Thomas L. Ludington
District Judge

Honorable Anthony P. Patti
Magistrate Judge

---

## DEFENDANTS' MOTION TO EXCLUDE PORTIONS OF MICHAEL TRICKEY'S PROFFERED EXPERT TESTIMONY

Nick Gorga (P72297)
Jeremy D. Lockhart (P76500)
Carsten A. Parmenter (P86425)
HONIGMAN LLP
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226
Tel: (313) 465-7000
ngorga@honigman.com
jlockhart@honigman.com
cparmenter@honigman.com

Deborah S. Birnbach
Adam Slutsky
Kate MacLeman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel: (617) 570-1000
dbirnbach@goodwinlaw.com
aslutsky@goodwinlaw.com
kmacleman@goodwinlaw.com

*Counsel for Defendant Rocket Companies, Inc.*

July 16, 2024

Jeffrey B. Morganroth (P41670)
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue,
Suite 200
Birmingham, Michigan 48009
Tel: (248) 864-4000
jmorganroth@morganrothlaw.com

Sharon L. Nelles (N.Y. 2613073)
Jeffrey T. Scott (N.Y. 2890374)
Julia A. Malkina (N.Y. 5054572)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
nelless@sullcrom.com
scottj@sullcrom.com
malkinaj@sullcrom.com
cohenja@sullcrom.com

*Counsel for Defendants Rock Holdings
Inc., Jay Farner, and Daniel Gilbert*

Pursuant to Rules 403, 702, and 703 of the Federal Rules of Evidence, Defendants Rocket Companies, Inc., Rock Holdings Inc., Jay Farner, and Daniel Gilbert, by and through their attorneys, Morganroth & Morganroth, PLLC, Sullivan & Cromwell LLP, Honigman LLP, and Goodwin Procter LLP, move this Court to exclude portions of the proffered expert testimony of Michael Trickey (Ex. 1) because those portions are unreliable under Federal Rules of Evidence 702 and 703 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and are unduly prejudicial and substantially likely to confuse and mislead the jury under Federal Rule of Evidence 403.  The grounds for exclusion are explained more fully in the accompanying Memorandum of Law.

Pursuant to Local Rule 7.1(a), Defendants' counsel conferred with Plaintiffs' counsel by phone to seek concurrence in the relief sought by this Motion to Exclude and explain the nature of the motion and its legal bases, but Plaintiffs declined to agree to voluntarily exclude portions of Trickey's proffered expert testimony.

WHEREFORE, Defendants respectfully request that this Court grant their Motion to Exclude and enter an order excluding portions of Trickey's proferred expert testimony.

July 16, 2024                                  Respectfully submitted,

/s/ Nick Gorga                                 /s/ Jeffrey T. Scott

Nick Gorga (P72297)                            Jeffrey T. Scott (N.Y. 2890374)
HONIGMAN LLP                                   SULLIVAN & CROMWELL LLP

(Additional counsel listed on cover)           (Additional counsel listed on cover)

*Counsel for Rocket Companies, Inc.*           *Counsel for Rock Holdings Inc., Jay
                                               Farner, and Daniel Gilbert*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————————————— x

CARL SHUPE and CONSTRUCTION : 
LABORERS PENSION TRUST FOR SOUTHERN : 
CALIFORNIA, Individually and on Behalf of :     No. 21-cv-11528
All Others Similarly Situated, : 

      Plaintiffs, :     Honorable Thomas L. Ludington
  :     District Judge
v. : 
  :     Honorable Anthony P. Patti
ROCKET COMPANIES, INC., JAY D. FARNER, :     Magistrate Judge
DANIEL GILBERT and ROCK HOLDINGS INC., : 

      Defendants. : 

———————————————————— x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE PORTIONS OF MICHAEL TRICKEY'S PROFFERED EXPERT TESTIMONY

Nick Gorga (P72297)
Jeremy D. Lockhart (P76500)
Carsten A. Parmenter (P86425)
HONIGMAN LLP
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226
Tel: (313) 465-7000
ngorga@honigman.com
jlockhart@honigman.com
cparmenter@honigman.com

Deborah S. Birnbach
Adam Slutsky
Kate MacLeman
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel: (617) 570-1000
dbirnbach@goodwinlaw.com
aslutsky@goodwinlaw.com
kmacleman@goodwinlaw.com

*Counsel for Defendant Rocket Companies, Inc.*

July 16, 2024

Jeffrey B. Morganroth (P41670)
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue,
Suite 200
Birmingham, Michigan 48009
Tel: (248) 864-4000
jmorganroth@morganrothlaw.com

Sharon L. Nelles (N.Y. 2613073)
Jeffrey T. Scott (N.Y. 2890374)
Julia A. Malkina (N.Y. 5054572)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
nelless@sullcrom.com
scottj@sullcrom.com
malkinaj@sullcrom.com
cohenja@sullcrom.com

*Counsel for Defendants Rock Holdings Inc.,
Jay Farner, and Daniel Gilbert*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................3

I.   Trickey's Opinion That Rocket Forecast the "Significant Decline" in its "Performance Metrics" "No Later Than December 2020" Is Not Based on Sufficient Facts or Data and Would Mislead the Jury.....................4

II.  Trickey's Presentation of the Contents of Rocket's Internal Financial Reports Would Not Aid the Jury and Is Misleading ......................................6

III. The Court Should Exclude Trickey's Opinion Regarding Investors' Ability to Make Projections of Rocket's Performance ...................................9

IV.  The Court Should Exclude any Opinion from Trickey Concerning the Credibility of Rocket's Witnesses or Interpretation of the Challenged Statements...............................................................................................12

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bowlers' Alley, Inc.* v. *Cincinnati Ins. Co.*,
2015 WL 3441155 (E.D. Mich. May 28, 2015) .................................................12

*In re Dow Corning Corp.*,
541 B.R. 643 (E.D. Mich. 2015) .............................................................................7

*Garvin* v. *Ethicon, Inc.*,
616 F. Supp. 3d 658 (W.D. Ky. 2022) .....................................................................7

*Gen. Elec. Co.* v. *Joiner*,
522 U.S. 136 (1997) ..................................................................................................4

*Hobart Corp.* v. *Dayton Power & Light Co.*,
2019 WL 4593589 (S.D. Ohio Sept. 23, 2019) ....................................................13

*J.S.T. Corp.* v. *Robert Bosch LLC*,
2021 WL 2431719 (E.D. Mich. June 15, 2021) ......................................................6

*James* v. *Thompson/Center Arms, Inc.*,
2024 WL 1328738 (N.D. Ohio Mar. 28, 2024) ......................................................3

*MAR Oil Co.* v. *Korpan*,
973 F. Supp. 2d 775 (N.D. Ohio 2013) .................................................................13

*Meemic Ins. Co.* v. *Hewlett-Packard Co.*,
717 F. Supp. 2d 752 (E.D. Mich. 2010) ...............................................................11

*Navarro* v. *Procter & Gamble Co.*,
501 F. Supp. 3d 482 (S.D. Ohio 2020) .................................................................12

*Nelson* v. *Tennessee Gas Pipeline Co.*,
243 F.3d 244 (6th Cir. 2001) ...................................................................................4

*In re Onglyza*,
93 F.4th 339 (6th Cir. 2024) .................................................................................3, 6

*SEC* v. *Am. Growth Funding II, LLC*,
2019 WL 1772509 (S.D.N.Y. Apr. 23, 2019) ......................................................14

*SEC* v. *Genovese*,
    2022 WL 16748779 (S.D.N.Y. Nov. 7, 2022) ..................................................... 8

*Tamraz* v. *Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) ....................................................................... 12

*Thomas* v. *Novartis Pharms. Corp.*,
    443 F. App'x 58 (6th Cir. 2011) ..................................................................... 3

*United States* v. *Crinel*,
    2017 WL 490635 (E.D. La. Feb. 7, 2017) ....................................................... 9

*United States* v. *Freeman*,
    730 F.3d 590 (6th Cir. 2013) ....................................................................... 14

*United States* v. *Ray*,
    2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) ..................................................... 9

*United States* v. *Rios*,
    830 F.3d 403 (6th Cir. 2016) ......................................................................... 6

**Other Authorities**

Federal Rule of Evidence 702 ...................................................................................... 3

**STATEMENT OF ISSUES PRESENTED**

1.      Should the Court exclude Trickey's opinion that Rocket's internal projections showed a decline in Rocket's performance metrics "no later than December 2020" because it is not based on sufficient facts or data and would mislead the jury?

2.      Should the Court exclude Trickey's presentation of summaries of Rocket's internal forecasts as unnecessary and misleading?

3.      Should the Court exclude Trickey's opinion that investors would have been unable to make their own projections of Rocket's financial performance based on publicly available data during the putative class period because it is not based on any reliable methodology?

4.      Should the Court preclude Trickey from testifying regarding the credibility of Rocket's fact witnesses and the meaning or interpretation of the challenged statements because such testimony was not disclosed in Trickey's report and would invade the province of the jury?

## STATEMENT OF CONTROLLING OR
## MOST APPROPRIATE AUTHORITIES

The controlling or most appropriate authorities for the relief that Defendants

seek include:

1.    Fed. R. Evid. 403

2.    Fed. R. Evid. 702

3.    *J.S.T. Corp.* v. *Robert Bosch LLC*, 2021 WL 2431719 (E.D. Mich. June 15, 2021)

4.    *United States* v. *Ray*, 2022 WL 558146 (S.D.N.Y. Feb. 24, 2022)

5.    *Meemic Ins. Co.* v. *Hewlett-Packard Co.*, 717 F. Supp. 2d 752 (E.D. Mich. 2010)

6.    *General Elec. Co.* v. *Joiner*, 522 U.S. 136 (1997)

7.    *Bowlers' Alley, Inc.* v. *Cincinnati Ins. Co.*, 2015 WL 3441155 (E.D. Mich. May 28, 2015)

8.    *Hobart Corp.* v. *Dayton Power & Light Co.*, 2019 WL 4593589 (S.D. Ohio Sept. 23, 2019)

9.    *SEC* v. *Am. Growth Funding II, LLC*, 2019 WL 1772509 (S.D.N.Y. Apr. 23, 2019)

10.   *United States* v. *Freeman*, 730 F.3d 590 (6th Cir. 2013)

## PRELIMINARY STATEMENT

Plaintiffs' proffered mortgage industry expert, Michael Trickey, has submitted a 151-page report, more than half of which consists of "background" information that he acknowledges does not constitute expert opinion. To the extent that Trickey does offer opinions, several of them veer into misleading advocacy untethered to the facts or data, or improperly usurp the province of the jury. The following opinions offered by Trickey should be excluded:

*First*, Trickey's opinion that Rocket's internal projections forecasted Rocket's Q2 2021 performance "no later than December 2020" (Ex. 1 ¶ 20(iii)) is contradicted by his own report, in which he shows that, as of December 2020, Rocket's internal projections for Q2 2021 substantially differed from later projections and its ultimate performance. At deposition, Trickey acknowledged, as documented in his own report (*id.* App'x A), that Rocket's internal forecasts changed substantially over the putative class period, undermining any claim that the drop in Rocket's financial metrics was known at the time the challenged statements were made in February and March 2021. Accordingly, Trickey's opinion that Rocket had forecasted the decline in its performance metrics "no later than December 2020" should be excluded.

*Second*, to the extent that Trickey attempts to offer broader "opinions" concerning Rocket's internal projections, all he has done is repackage figures from documents produced by Rocket in discovery. No expert analysis is brought to bear

on those figures, which are better explained by fact witnesses who prepared the documents and which the jury is perfectly capable of understanding without any testimony from Trickey. Moreover, Trickey's repackaging of Rocket's internal data through "heat map" charts of his own creation purporting to show "trends and extremes" is highly misleading and should be excluded for that reason as well.

*Third*, Trickey also has completely failed to bring any defensible or reliable methodology to bear on his opinion that investors would not have been able to make their own projections of Rocket's financial metrics during the class period. Trickey has done no analysis of whether and how investors and equity analysts actually did create projections of Rocket's performance, or for that matter, how the internal Rocket reports he relies on were created. Instead, Trickey parrots Plaintiffs' position—asserting that Rocket possessed non-public information whereas investors and analysts had access to only public information—but fails to show how that disadvantaged investors when it came to making projections about periods as to which Rocket, too, had no hard data. Ultimately, Trickey's opinion that investors and analysts did not have access to similar data to use to make projections is based only on his own *ipse dixit*. This is not expert opinion, but pure advocacy.

*Finally*, at deposition, Trickey went even further than in his report, providing testimony concerning both his views as to the credibility of Rocket's witnesses and his interpretation of the meaning of the challenged statements. To the extent that

Trickey intends to offer testimony at trial on either of those points, such testimony should be excluded because it was not offered in his report and would improperly invade the jury's province.

## ARGUMENT

Under Federal Rule of Evidence 702, a properly qualified expert may testify only "if the proponent [of the testimony] demonstrates to the court that it is more likely than not that" (i) the expert has "scientific, technical, or other specialized knowledge," (ii) "the testimony is the product of reliable principles and methods" and the "reliable application" of that methodology "to the facts of the case," (iii) "the testimony is based on sufficient facts or data," and (iv) the expert's testimony "will help" the trier of fact "to understand the evidence or to determine a fact in issue."

The Sixth Circuit has emphasized that district courts "must . . . screen[] the reliability of expert testimony to keep 'junk science' away from juries," *Thomas* v. *Novartis Pharms. Corp.*, 443 F. App'x 58, 60 (6th Cir. 2011), and ensure "*only* relevant and reliable expert testimony" goes to the jury, *In re Onglyza*, 93 F.4th 339, 348 (6th Cir. 2024) (emphasis in original).  The recent amendments to Rule 702 emphasize that the reliability and application of an expert's methodology are "not merely [] question[s] of weight, to be decided by a jury," but must be established to the Court "by a preponderance of the evidence."  *James* v. *Thompson/Center Arms, Inc.*, 2024 WL 1328738, at *2 (N.D. Ohio Mar. 28, 2024).  "A district court is not

required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Nelson* v. *Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001) (*quoting Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997)).

## I. Trickey's Opinion That Rocket Forecast the "Significant Decline" in its "Performance Metrics" "No Later Than December 2020" Is Not Based on Sufficient Facts or Data and Would Mislead the Jury.

Trickey states that "[r]ising interest rates played a significant role in Rocket's reduced gain on sale margin [('GOSM')] and closed loan volume from Q4 2020 to Q2 2021" and opines that "Rocket's periodic reports show *this significant decline in certain key performance metrics* was forecasted by the Company starting no later than December 2020." (Ex. 1 ¶ 20 (emphasis added).) This opinion is untethered to the facts and data in the record and would mislead the jury.

In particular, as the internal Rocket data summarized in Trickey's report makes clear, the drop in Rocket's internal projections of GOSM and closed loan volume as of February 25, 2021 was disclosed in the results and Q1 2021 guidance Rocket provided to the market on that date. Rocket's projections dropped over the course of the class period, resulting in the revised Q2 guidance. Accordingly, Trickey's opinion that the information disclosed to the market on May 5, 2021 was forecasted by Rocket "no later than December 2020" is wrong and misleading.

To start, there is no dispute that on February 25, 2021, the first day of the putative class period, Rocket disclosed that its Q4 2020 GOSM had declined to 4.41% and was projected to further decline to between 3.6% and 3.9% in Q1 2021. (*See* Ex. 3.)  Likewise, on that date, Rocket disclosed that its closed loan volume was expected to decline in Q1 2021 to between $98 and $103 billion.  (*Id.*)  Those declines were entirely consistent with Rocket's internal projections as of that date as Trickey acknowledges.  (Ex. 2 at 247:14-18.)

Likewise, as Trickey states, "[f]rom the February 16, 2021 Compass Report issued right before the February 2021 earnings call, to the 4/20/2021 Compass Report issued right before the May 2021 earnings call," Rocket's "Rate Lock GOSM" projection for Q2 fell more than 100 basis points.  (Ex. 1 ¶ 261; *see* Ex. 2 at 265:6-267:18.)  Similarly, between those reports, Rocket's internal projections for Q2 2021 closed loan volume dropped from approximately $92.8 million to $87.1 million.  (Ex. 1 App'x A Table 5.)  Given those facts, at deposition, Trickey conceded that Rocket's internal projections as of the time of the challenged statements showed "substantially higher" numbers than the guidance disclosed to the market on May 5, 2021, and that there were "meaningful changes" to Rocket's projections "*after* the first quarter of 2021."  (Ex. 2 at 71:25-72:5, 269:9-24 (emphasis added).)

As a result, Trickey's opinion that Rocket's forecasts "no later than December 2020" anticipated the actual results and projections that Rocket ultimately disclosed on May 5, 2021 has no basis in fact whatsoever, much less sufficient facts or data, as evidenced by both Trickey's report and deposition.  It would thus serve only to confuse and mislead the jury.  These opinions should be excluded.  *See In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 346 (6th Cir. 2024) (expert report that ignored relevant information excluded because it failed to base opinion on "sufficient facts or data").

## II. Trickey's Presentation of the Contents of Rocket's Internal Financial Reports Would Not Aid the Jury and Is Misleading.

Trickey's remaining "opinions" concerning the contents of Rocket's internal forecasts consist of a 23-page recitation of the contents of various internal reports, with Trickey concluding that those reports forecast a decline in certain performance metrics.  (Ex. 1 ¶¶ 241-304.)  But for these "opinions," all Trickey does is summarize the contents of documents produced in discovery in a misleading fashion.

"[I]t is inappropriate for experts to act merely 'as a vehicle to present a factual narrative of interesting or useful documents for a case.'"  *J.S.T. Corp.* v. *Robert Bosch LLC*, 2021 WL 2431719, at *4 (E.D. Mich. June 15, 2021).  Reading the numbers in Rocket's internal reports "is not beyond the ken of the average juror," *United States* v. *Rios*, 830 F.3d 403, 413 (6th Cir. 2016), and accordingly, "[h]earing [Trickey] opine on internal documents . . . would not necessarily help the jurors, who

are 'capable of reading that document itself,'" *Garvin* v. *Ethicon, Inc.*, 616 F. Supp. 3d 658, 677 (W.D. Ky. 2022); *see In re Dow Corning Corp.*, 541 B.R. 643, 650 (E.D. Mich. 2015) (excluding expert report that included no analysis other than a "summary of [plaintiff's] medical history").

In addition, the manner in which Trickey has chosen to summarize the contents of Rocket's internal reports is misleading and should be excluded for that reason as well. Rather than presenting the data objectively, Trickey has created a series of summary "heat map" charts, in which his reproduction of Rocket's financial metrics and projections are "colored in shades of green and red based upon their relative magnitude to other cells in each column of the [t]able." (Ex. 1 ¶ 256.) Thus, by coloring some data points dark red, Trickey purports to present certain values as showing "extremes." (*Id.* ¶ 186.) For example, Trickey presents the following chart purporting to summarize Rocket's production metrics for the period from January 2020 to April 2021 using his "heat mapping":

| Month | All In Turn Time (Days) | Total Closed Loan Volume | Gross Rate Lock Volume | | Pull Through Rate % | | Net Rate Lock Volume | | Gain on Sale Margin % | | Gain on Sale of Loans, Net | Primary Market Mortgage Rate % | Secondary Rate % | Primary Secondary Spread % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20-Jan | 34.55 | 14.908 | 24.532 | x | 69.5% | = | 17.058 | x | 2.95% | = | 0.501 | 3.51% | 2.43% | 1.08% |
| 20-Feb | 27.62 | 16.542 | 26.699 | x | 68.0% | = | 18.160 | x | 3.08% | = | 0.556 | 3.45% | 2.27% | 1.18% |
| 20-Mar | 25.71 | 20.254 | 18.362 | x | 113.4% | = | 20.832 | x | 3.65% | = | 0.756 | 3.50% | 1.69% | 1.81% |
| 20-Apr | 28.63 | 21.645 | 20.083 | x | 93.7% | = | 18.817 | x | 6.34% | = | 1.190 | 3.23% | 1.52% | 1.71% |
| 20-May | 32.75 | 24.319 | 43.939 | x | 87.8% | = | 38.569 | x | 5.50% | = | 2.115 | 3.15% | 1.68% | 1.47% |
| 20-Jun | 37.63 | 26.360 | 50.041 | x | 69.1% | = | 34.591 | x | 4.21% | = | 1.450 | 3.13% | 1.62% | 1.51% |
| 20-Jul | 40.77 | 27.256 | 45.832 | x | 69.3% | = | 31.760 | x | 4.32% | = | 1.373 | 2.99% | 1.29% | 1.70% |
| 20-Aug | 42.96 | 29.221 | 48.430 | x | 67.5% | = | 32.682 | x | 4.88% | = | 1.589 | 2.91% | 1.43% | 1.48% |
| 20-Sep | 46.05 | 32.505 | 46.993 | x | 64.3% | = | 30.226 | x | 4.33% | = | 1.318 | 2.90% | 1.42% | 1.48% |
| 20-Oct | 48.23 | 39.338 | 46.764 | x | 66.7% | = | 31.211 | x | 4.48% | = | 1.397 | 2.81% | 1.40% | 1.41% |
| 20-Nov | 45.61 | 33.002 | 43.840 | x | 65.1% | = | 28.528 | x | 5.12% | = | 1.467 | 2.72% | 1.38% | 1.34% |
| 20-Dec | 40.83 | 34.900 | 47.305 | x | 76.6% | = | 36.236 | x | 4.22% | = | 1.315 | 2.67% | 1.34% | 1.33% |
| 21-Jan | 37.77 | 35.792 | 42.602 | x | 75.4% | = | 32.119 | x | 4.30% | = | 1.380 | 2.73% | 1.41% | 1.32% |
| 21-Feb | 30.28 | 33.116 | 40.941 | x | 75.8% | = | 31.014 | x | 3.90% | = | 1.211 | 2.97% | 2.03% | 0.94% |
| 21-Mar | 27.37 | 34.617 | 41.377 | x | 77.3% | = | 31.983 | x | 3.01% | = | 0.957 | 3.17% | 1.97% | 1.20% |
| 21-Apr | | 28.686 | 38.648 | x | 71.9% | = | 27.806 | x | 2.69% | = | 0.746 | 2.98% | 1.88% | 1.10% |

But, as Trickey repeatedly acknowledges, Rocket's "dark green" results in 2020 were a product of extraordinary macroeconomic circumstances, with its metrics, including GOSM, returning to more normalized levels in 2021. (Ex. 2 at 159:5-13, 219:19-25.)   Thus, the data Trickey presents as "extreme" negative departures in March and April 2021 through his "heat maps" in fact represents a return to historical norms when viewed over a longer period.  By presenting Rocket's data in this manner—rather than objectively comparing Rocket's performance metrics to historical averages—Trickey's charts flash red for any values that are merely below the aberrational highs of 2020.  This "use of simplified charts showing stark trend lines that may mislead the jury" should be excluded.  *SEC* v. *Genovese*, 2022 WL 16748779, at *5 (S.D.N.Y. Nov. 7, 2022).

Further, much of the information in Trickey's "heat maps" comes from reports that post-date the challenged statements, and are therefore—as Trickey admitted at deposition—irrelevant to any assessment of what information Rocket or its

-8-

executives could have been aware of at the time the statements were made.  (*See* Ex.
2 at 268:23-269:8.)   For example, the "extreme" March and April 2021 GOSM
results Trickey presents in the above chart were not available to Rocket when the
challenged statements were made.   Similarly, Trickey's "heat maps" of Rocket's
internal projections for future periods contained in Appendix A of his report contain
weeks' worth of projections from the period after the challenged statements were
made.  This creates an undue risk of unfair prejudice and misleading the jury because
it purports to show "trends and extremes" based on the inclusion of data from
irrelevant time periods.   For that reason too, Trickey's misleading "heat maps"
should be excluded.  *See United States* v. *Crinel*, 2017 WL 490635, at *8 (E.D. La.
Feb. 7, 2017) (excluding summary chart as "misleading" because it covered a three-
month period where relevant activity could not have occurred); *see also United
States* v. *Ray*, 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) ("A chart which
for any reason presents an unfair picture can be a potent weapon for harm, and
permitting the jury to consider it is error.").

**III.   The Court Should Exclude Trickey's Opinion Regarding Investors'
Ability to Make Projections of Rocket's Performance.**

Trickey purports to opine that "during the class period, investors would not
have been able to independently project Rocket's key performance metrics and
expected profitability using only information obtained from publicly available

sources."  (Ex. 1 at 140-51 (capitalization omitted).)   This opinion should be excluded because it is unsupported by any methodology, let alone a reliable one.

At its core, Trickey's opinion on Rocket and investors' ability to project Rocket's performance metrics is based on the following "analysis":

- *First*, Trickey lists:  (i) certain types of information that are available to Rocket; and (ii) certain types of information he generically contends were available to the public.  (*Id.* ¶¶ 351, 355-60.)

- *Second*, Trickey notes that:  (i) Rocket uses internal data to create its own projections (*id.* ¶¶ 351, 355); and (ii) certain of the information that he identified as publicly available is more limited than some of the information that is internal to Rocket (*id.* ¶¶ 361-62).

Nowhere in his report does Trickey connect those observations to support his sweeping opinion that investors would have been unable to make projections of Rocket's performance comparable to Rocket's own projections.

Indeed, Trickey readily admitted at deposition that he did not look at a *single* report by any of the analysts that *actually did* make performance projections for Rocket during the putative class period, and made no investigation into what information analysts relied on in making those projections.[1]  Trickey also disavowed having done any analysis of "how investors who are invested in Rocket analyzed its future prospects" (Ex. 2 at 311:23-312:1), and admitted he made no effort to

---

[1]    Ex. 2 at 305:20 ("I didn't look at any analysts . . . and I wasn't asked to"), 312:13-14 ("I did not look at any of the analysts' reports"), 313:21-22 ("I don't know what all the analysts were doing.  Okay?").

"ascertain how investors during the Class Period analyzed Rocket and what metrics they relied on" (*id.* at 317:25-318:4).  Indeed, Trickey admitted at deposition that he was not offering "any opinions about what Rocket versus what the market expected." (*Id.* at 250:1-20.)

Instead, Trickey's opinion relies entirely on his self-serving claim that "I'm probably as sophisticated . . . as all the analysts."  (*Id.* at 312:24-25.)  On that basis, despite conceding that it is at least "partially correct" that his opinion is speculative, Trickey claimed that he was "not totally speculating" about what information was available to investors, and how their projections compared to internal Rocket reports. (*Id.* at 314:5.)  But in his "not total[] speculat[ion]," Trickey completely ignores witness testimony that Rocket's internal projections about performance outside the current quarter were based on (inherently unpredictable) interest rates and macroeconomic trends impacting the mortgage market (*see* Mot. For Summ. Jdgmt at 39)—information that was equally available to the public.

An expert's "conclusions must be connected to the existing data by more than the *ipse dixit* of the expert."  *Meemic Ins. Co.* v. *Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 762 (E.D. Mich. 2010).  Here, all Trickey has done is pile assumption upon assumption.  He assumes, with no analysis, that the data he flags as non-public were important inputs to internal Rocket projections.  (Ex. 2 at 311:23-312:10, 318:5-12.) He then assumes that these data would have enabled Rocket to make better

projections than analysts or investors, without assessing the accuracy of any such projections. (*Id.*) And finally, Trickey assumes investors or analysts would have been unable to make projections as accurate as Rocket's in the absence of Rocket's internal data, without any analysis and while ignoring projections actually made by analysts. (*Id.*) "An expert whose conclusions are just 'assumptions' has not used a weak methodology; he has used no methodology at all." *Navarro* v. *Procter & Gamble Co.*, 501 F. Supp. 3d 482, 494 (S.D. Ohio 2020). And "an expert's opinion . . . become[s] speculative and unreliable where it depends on too long a chain of 'inferences upon inferences.'" *Bowlers' Alley, Inc.* v. *Cincinnati Ins. Co.*, 2015 WL 3441155, at *4 (E.D. Mich. May 28, 2015); *see Tamraz* v. *Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010) (excluding expert opinion that "contains not just one speculation but a string of them").

Accordingly, Trickey's opinion concerning investors' ability to project Rocket's performance should be excluded because it lacks a reliable methodology and is dependent entirely on Trickey's *ipse dixit*.

**IV.    The Court Should Exclude any Opinion from Trickey Concerning the Credibility of Rocket's Witnesses or Interpretation of the Challenged Statements.**

At deposition, Trickey engaged in two new lines of opinion that were not disclosed in his report and are not proper subjects of expert testimony.

*First*, Trickey attacked the credibility of Rocket's witnesses, who have repeatedly and consistently testified as to the difficulty in the mortgage industry of making meaningful performance projections beyond the current quarter.  (*See* Mot. For Summ. Jdgmt at 39.)  For example, Trickey suggested that the testimony of Rocket's Chief Accounting Officer during the class period, Brian Brown, and Pete Mareskas, a Rocket director of finance during the class period, is "not consistent" and "doesn't jive," based on Trickey's "experience in the industry."  (Ex. 2 at 321:3-18, 323:14-18.)[2]  But "[i]t is clearly established that expert witness testimony concerning the credibility of a fact witness is improper."  *Hobart Corp.* v. *Dayton Power & Light Co.*, 2019 WL 4593589, at *7 (S.D. Ohio Sept. 23, 2019).  "The jury, not the expert, evaluates credibility."  *MAR Oil Co.* v. *Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013).  Thus, Trickey may not opine on the credibility of Rocket's witnesses at trial, and the opinions he offered for the first time at deposition should be excluded.

*Second*, Trickey testified several times as to his interpretation of the challenged statements, claiming the statements were a "differentiation that Rocket

---

[2]     In his report, Trickey also criticizes "[c]ertain deponents" for "express[ing] the view that it was difficult for Rocket to make longer-range forecasts," and argues that these deponents' testimony "do[es] not reconcile" with other testimony that investors and analysts are able to make their own forecasts of Rocket's performance. (Ex. 1 ¶ 346.)  Trickey's deposition testimony makes apparent that this opinion also is an attempt to assess the credibility of Rocket's witnesses (Ex. 2 at 321:3-19, 323:14-18), and thus this portion of his report also should be excluded.

-13-

was putting forth to the marketplace that rates going up or down really didn't affect it" and that "part of the issue here is that Mr. Farner made statements which suggested that . . . it didn't matter if rates went up or down for Rocket having an impact on Rocket's business." (Ex. 2 at 160:19-161:7.) Trickey also purported to provide reasons "*why* the plaintiffs may understand [Farner's statements] to mean that he was *basically saying we're not impacted by interest rates*." (*Id.* 180:7-10 (emphasis added).) None of this testimony is appropriate. "[T]he jury is capable of interpreting the plain language" of the statements, and "whether a reasonable investor would be materially misled by the language contained in the [statements] is an 'ultimate legal conclusion,' and this determination rests with the jury." *SEC* v. *Am. Growth Funding II, LLC*, 2019 WL 1772509, at *2 (S.D.N.Y. Apr. 23, 2019); *see United States* v. *Freeman*, 730 F.3d 590, 598 (6th Cir. 2013) (expert's interpretation of "plain English" statements "infringe[s] upon the role of the jury to decide what to infer from the evidence, and instead t[ells] them what conclusions and inferences to draw"). Accordingly, Trickey should be precluded from offering his interpretation of the challenged statements at trial.[3]

---

[3] At deposition, Trickey himself acknowledged that the interpretation of the challenged statements is "a matter for the triers of fact," and said "that's not something I would do." (Ex. 2 at 130:14-25.) But despite this statement, Trickey *did* purport to interpret the statements repeatedly at deposition.

## CONCLUSION

For the foregoing reasons, the Court should exclude:  (i) Trickey's opinion that Rocket had forecast its Q2 2021 guidance or performance "no later than December 2020" (Ex. 1 ¶¶ 20(iii), 242-304); (ii) Trickey's misleading presentations of Rocket's financial reports (*id.* at pp. 79, 92, 94, 103, 117-18, 124-25, and App'x A); (iii) Trickey's opinion concerning the ability of investors to make projections of Rocket's performance (*id.* ¶¶ 20(vii), 345-62); and (iv) any attempt by Trickey to testify at trial concerning the credibility of Rocket's witnesses or the interpretation of the challenged statements.

July 16, 2024                           Respectfully submitted,

/s/ Nick Gorga                          /s/ Jeffrey T. Scott
Nick Gorga (P72297)                     Jeffrey T. Scott (N.Y. 2890374)
HONIGMAN LLP                            SULLIVAN & CROMWELL LLP

(Additional counsel listed on cover)    (Additional counsel listed on cover)

*Counsel for Rocket Companies, Inc.*    *Counsel for Rock Holdings Inc., Jay Farner, and Daniel Gilbert*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2024, I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system, which will send notification of

such filing to all parties of record, and I hereby certify that I have mailed by United

States Postal Service the paper to the following non-ECF participants:  None.

Respectfully submitted,

*/s/ Jeffrey T. Scott*
Jeffrey T. Scott (N.Y. 2890374)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000

*Counsel for Defendants Rock Holdings Inc.,*
*Jay Farner, and Daniel Gilbert*

July 16, 2024