UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARL SHUPE, and CONSTRUCTION
LABORERS PENSION TRUST FOR SOUTHERN
CALIFORNIA,

        Plaintiffs,        Case No. 1:21-cv-11528

v.        Honorable Thomas L. Ludington
        United States District Judge

ROCKET COMPANIES, INC., JAY FARNER,
DANIEL GILBERT, and ROCKET HOLDINGS, INC,

        Defendants.
_____/

**OPINION AND ORDER DENYING NONPARTY RYAN BRANSON'S MOTION TO QUASH SUBPOENA AND DENYING NONPARTY ORLYN SHUPE'S MOTION TO QUASH SUBPOENA**

Currently before this Court are two identical motions filed by nonparties Ryan Branson and Orlyn Shupe, seeking to quash identical subpoenas compelling their deposition testimony. As explained below, both motions will be denied.

I.

Plaintiffs Carl Shupe and Construction Laborers Pension Trust for Southern California ("SoCal") allege that Defendants Rocket Companies, Inc. ("Rocket"), Rocket CEO Jay Farner, Rocket founder Dan Gilbert, and Rocket's holding company ("RHI") violated Sections 10(b) and 20(a) of the Exchange Act when Defendant Farner made a series of alleged fraudulent misrepresentations throughout February and March 2021 which artificially inflated and maintained the price of publicly-traded Rocket Class A common stock. *See* ECF No. 109 at PageID.8555–59. Plaintiffs additionally allege that Defendant Gilbert committed insider trading on March 29, 2021, when he—through his ownership of RHI—sold 20,000,000 shares of Rocket Class A common

stock six days after he learned about impending financial struggles, but over one month before this information was released to the public. *See id.* at PageID.8551–55. Relevant to the instant motions, to succeed on the merits of their Section 10(b) securities-fraud claims, Plaintiffs must prove—among other elements—that they relied on Defendant Farner's alleged misrepresentations when investing in Rocket Class A common stock. *See Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 667 (E.D. Mich. 2023).

Plaintiff Shupe traded Rocket Class A common stock on two—and only two—days: March 2nd and 3rd, 2021. ECF No. 73-1 at PageID.2433–35. On March 2, Shupe purchased 21,000 shares of Rocket Stock at $29 per share and sold them all when the price rose to $40 per share, profiting nearly $250,000. *Id.* at PageID.2433–35; ECF No. 120-29 at PageID.9986. On March 3, Shupe purchased approximately 40,000 more shares at $35.50 per share, which he did not sell until August 2021. *Id.*; *see also* ECF No. 120-29 at PageID.9988. In accordance with Defendants' contention that Rocket stock was a "meme-stock" subject to frenzied social media interest on Twitter and Reddit the same two days Shupe bought and sold his shares, Defense Counsel extensively asked Shupe about *why* he decided to invest in Rocket stock throughout his January 2022 deposition.

Shupe's answers were contradictory. Shupe testified that he first "started looking" at Rocket as an investment opportunity in "November 2020" because he was impressed with Gilbert and Farner's philanthropy. ECF No. 120-29 at PageID.9953–55. Shupe testified that he believed Rocket stock was properly valued at $29 per share. *Id.* at PageID.9961. But, as Shupe himself recognized, prior to March 2, 2021, the price per share of Rocket stock never exceeded $25. *Id.* at PageID.9987. Curiously, instead of purchasing Rocket stock when it would have been—by Shupe's logic—undervalued, Shupe did not purchase shares until March 2, 2021, when the price

of Rocket stock rose to $29—the very day Defendants describe as the beginning of a two-day meme stock frenzy driven by Reddit retail investors. *See* ECF Nos. 126 at PageID.11284–85; *see also* ECF No. 227 at PageID.40611–13. Indeed, despite testifying that he purchased Rocket shares on March 2 as part of a "long-term" investment strategy in which he planned to hold his shares for "two-to-five" years, he sold his shares less than 24 hours later. ECF No. 120-29 at PageID.9975. Moreover, Shupe testified he sold his shares on March 2nd when the price rose to $40 per share because he thought "the stock was overinflated," and he "expected" the stock price to fall to $30 per share. *Id.* at PageID.9986. Yet Shupe purchased more shares the next day, on March 3, when the price of Rocket stock was $35 per share. *Id.* at PageID.9988.

Shupe insisted he did not make investment decisions based on Redditt or other social media posts and that he specifically did not "reference[] Reddit at all on March 2nd or March 3rd" when he traded Rocket Stock because he was "extremely busy with . . . a handyman job." *Id.* at PageID.9960, 10026. Yet he testified that he frequently browsed r/wallstreet bets—the main subreddit associated with "meme stocks" phenomenon, in which numerous retail investors posted about investing in Rocket stock to force a short squeeze on March 2 and 3, 2021. *Id.* at PageID.9958–61, *see also* ECF No. 227 at PageID40611–13. Indeed, Shupe conceded he read Reddit posts about Rocket stock on March 2, 2021, when—in his words—posts about Rocket "really took off." ECF No. 120-29 at PageID.9959, 10018–19, 9961.

Aside from this curious and contradicting testimony, Shupe testified that he discussed his investments with two people: Ryan Branson and Jessie "Orlyn" Shupe.[1] Shupe testified that he became friends with Branson through prior investment circles, and that the two would often share

---

[1] For the purposes of this Opinion and Order, nonparty Orlyn Shupe will be referred to by his first—rather than last—name, to avoid confusion with his brother, Plaintiff Carl Shupe.

"stock tips." *Id.* at PageID.10019–20. Shupe specifically stated that he had "meaningful conversations" about Rocket stock with Branson before Shupe purchased his shares. *Id.* at PageID.10020, 10022. Orlyn Shupe is Plaintiff Shupe's brother. ECF No. 116-5 at PageID.8976. Plaintiff Shupe testified that he began discussing Rocket stock with Orlyn in 2020, and that the two talked about Rocket investments about "15 to 20 times." ECF No. 120-29 at PageID.9952–53. Indeed, Orlyn invested in Rocket stock, too. *Id.* at PageID.9953.

In January 2024, based on Shupe's deposition testimony, Defendants served Branson and Orlyn with separate subpoenas compelling them to produce the following:

(1) All [c]ommunications with Carl Shupe concerning Rocket[], Jay Farner, and/or Daniel Gilbert.
(2) All [c]ommunications with Carl Shupe concerning [the above-captioned case].
(3) All [c]ommunications with Carl Shupe concerning his buying and/or selling stock, including but not limited to his buying and/or selling [Rocket] stock.
(4) All [d]ocuments concerning any position [y]ou held in concerning securities issued by Rocket[] including but not limited to, trade blotter data, position summaries, and other transaction records.
(5) All [c]ommunications with Carl Shupe concerning Wall Street Bets, Reddit, and meme stocks including GameStop.

ECF Nos. 115-3 at PageID.8935; 116-3 at 8971.

Both Branson and Orlyn retained the same Counsel to object and respond to Defendants' identical subpoenas. ECF Nos. 115-4 at PageID.8937; 116-4 at PageID.8973. On January 30, 2024, Branson and Orlyn's Counsel emailed Defense Counsel with Branson's and Orlyn's objections and—importantly—noted that neither possessed any documents or communications responsive to Defendants' subpoenas. ECF No. 115-4 at PageID.8937–38. Accordingly, on February 1, 2024, Defendants served Branson and Orlyn with a second set of separate subpoenas (the "February Subpoenas") compelling each to appear for a deposition scheduled for February 15, 2024. ECF Nos. 115-2 at PageID.8924; 116-2 at PageID.8960.

On February 14, 2024, Branson and Orlyn filed separate motions to quash Defendants' February Subpoenas as unduly burdensome. ECF No. 115; 116. Orlyn attached a sworn declaration in which he averred that he "had one brief conversation with [Plaintiff] Shupe regarding Rocket stock" during which Plaintiff Shupe simply said, "I am buying Rocket stock, you should too." ECF No. 116-5 at PageID.8976. "Following this conversation," Orlyn avers he "purchased a small number of Rocket stock shares," which he "retain[s] . . . to this day." *Id.* Similarly, Branson avers that he "do[es] not recall ever having any conversations with [Plaintiff] Shupe regarding or referencing Rocket[.]" ECF No 115-5 at PageID.8940. Defendants responded to both motions to quash two weeks later. ECF Nos. 126; 127. And both Branson and Orlyn filed replies in support on March 6, 2024. ECF Nos. 129; 130.

## II.

Civil Rule 45 "permits litigants to obtain discovery from nonparties via subpoena while simultaneously protecting nonparties from excessively onerous requests for information." *Lyons v. My Pillow, Inc.,* No. 23-1308, 2023 WL 8450724, at *2 (6th Cir. Dec. 6, 2023). Indeed, Civil Rule 45 requires the court to quash or modify a subpoena that subjects a nonparty to undue burden. *Id.* (citing FED. R. CIV. P. 45(d)(3)(A)(iv)). The party seeking to quash bears a "heavy burden" to show that a subpoena is unduly burdensome. *Pianko v. Gen. R.V. Ctr., Inc.*, No. 20-13371, 2022 WL 2674189, at *1 (E.D. Mich. July 11, 2022); *United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006). Undue burden is assessed on a case-by-case basis upon consideration of (1) the likely relevance of the requested material; (2) the moving party's need; (3) the subpoenaed party's burden; and (4) the breadth of the request, such as the "time period covered by it" and the "particularity with which the documents are described." *In re: Mod. Plastics Corp.,* 890 F.3d 244, 251 (6th Cir. 2018); *Lyons*, 2023 WL 8450724, at *2.

In addition to Rule 45, Civil Rule 26(b)(2)(C)(i) allows courts to quash subpoenas seeking to compel "unreasonably cumulative or duplicative" discovery, or discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Versata Software v. Internet Brands, Inc.*, No. 11-MC-50846, 2011 WL 4905691, at *2 (E.D. Mich. Oct. 14, 2011); *see also* FED. R. CIV. P. 26(b)(2)(C)(i).  At bottom, the decision to quash a subpoena is within a district court's sound discretion. *Thomas v. City of Cleveland*, 57 Fed. Appx. 652, 654 (6th Cir. 2003); *Trier v. Genesee Cnty.*, No. 2:17-CV-10236, 2017 WL 5897057, at *1 (E.D. Mich. Aug. 2, 2017).

### III.

Branson's and Orlyn's separate motions to quash can be discussed in tandem because both seek to quash identical subpoenas on identical grounds. *Compare* ECF No. 115 *with* ECF No. 116.

***Relevance and Need.*** The February Subpoenas seek to compel relevant testimony. A central element of Plaintiff Shupe's Section 10(b) securities-fraud claim is that he *relied* on Defendant Farner's alleged misrepresentations when he invested in Rocket stock on March 2nd and 3rd, 2021. *See Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 667 (E.D. Mich. 2023). Plaintiff Shupe provided contradictory testimony about his investment motivations during his deposition but noted that he had extensive conversations about investing in Rocket stock with two—and only two—people: his friend, Ryan Branson, and his brother, Orlyn Shupe. ECF No. 120-29 at PageID.10020–22 (testifying that he had "the most meaningful" conversations about Rocket stock with Branson); PageID.9952–53 (testifying that he talked to Orlyn about Rocket stock "15 to 20 times"). Branson and Orlyn's testimony about these conversations may provide key information relevant to Plaintiff Shupe's reliance. Indeed, the contradictory nature of Plaintiff Shupe's testimony only *increases* the relevancy and need for Branson and Orlyn's testimony about

why Shupe was interested and investing in Rocket stock. Branson and Orlyn do not argue to the contrary. *See* ECF Nos. 115; 116.

***Cumulativeness and Convenience.*** Instead, Branson and Orlyn primarily argue that the February Subpoenas are needlessly cumulative and seek information that could be obtained from Plaintiff Shupe, who they contend is a more convenient source. ECF Nos. 115 at PageID.8917, 116 at PageID.8953. Neither argument is persuasive.

First, Branson and Orlyn argue that their depositions would be cumulative because Branson does not recall having any conversations about Rocket stock with Plaintiff Shupe, and Orlyn only recalls one conversation, which he explained in his declaration. ECF Nos. 115 at PageID.8917; 116 at PageID.8953. But "a professed lack of . . . knowledge [is] insufficient to quash a subpoena for deposition testimony." *Nguyen v. Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V.*, No. MC 21-0014 (CKK), 2021 WL 5800741, at *4 (D.D.C. Dec. 7, 2021). Indeed, because "depositions play an important role in allowing a party to ask probative follow-up questions," a party may permissibly depose a nonparty who has denied possession of relevant information so long as the deposition is limited to attesting the nonparty's purported lack of knowledge and other relevant inquiries. *Id.* (internal quotations omitted). Although Branson and Orlyn "may very well possess no such information"—as their declarations suggest—Defense Counsel nevertheless is "permitted to test [their] asserted lack of knowledge and to question [them] on matters directly related to this case." *Darling v. Girard*, No. 15-MC-499 (BAH), 2015 WL 13898434, at *7 (D.D.C. July 20, 2015) (internal quotations omitted).

Second, and somewhat alternatively, Branson and Orlyn argue that, to the extent their testimony is not cumulative, all information they could provide is attainable from a more convenient source: Plaintiff Shupe. ECF Nos. 115 at PageID.8917–18; 116 at PageID.8953. True,

consistent with Civil Rule 26, "courts in this circuit have repeatedly . . . quashed subpoenas directed to non-parties where the discovery sought was obtainable from a party to the litigation." *Baumer v. Schmidt*, 423 F. Supp. 3d 393, 408 (E.D. Mich. 2019) (collecting cases); *but see State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.,* No. 12-CV-11500, 2013 WL 10936871, at *11 (E.D. Mich. Nov. 26, 2013) (noting there is "no absolute rule prohibiting" nonparty production of information which may also be produced by a party (internal quotations omitted)). But those cases typically involve *tangible* discovery like emails and documents—not *testimony* about a prior conversation. *See, e.g.*, *Baumer*, 423 F. Supp. 3d at 408–10 (quashing nonparty subpoena seeking to compel documents which corporate defendant also possessed); *Vamplew v. Wayne State Univ. Bd. of Governors*, No. 12-14561, 2013 WL 3188879, at *4 (E.D. Mich. June 20, 2013) (quashing subpoena compelling nonparty to produce emails which defendant also possessed); *Seven Bros. Painting, Inc. v. Painters & Allied Trades Dist. Council No. 22*, No. 09-12506, 2010 WL 11545174, at *3 (E.D. Mich. June 7, 2010) (quashing subpoena compelling nonparty to produce documents that the union-defendant likely also possessed); *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (quashing subpoena because the subpoenaing party did not explain why the documents sought could not be obtained directly from a defendant). Indeed, it takes two to talk. While Shupe can provide *his* recollection of conversations with Branson and Orlyn, only Branson and Orlyn can testify about *their* recollections of these conversations.

In sum, neither Branson nor Orlyn's declarations regarding their recollections of conversations with Plaintiff Shupe render their depositions needlessly cumulative. And the fact that Plaintiff Shupe was also a party to these conversations is inapposite because he can only provide *his* recollection of these conversations. The February Subpoenas pose no cumulativeness or convenience problems.

***Burden and Breadth.*** The February Subpoenas are not unduly burdensome or overbroad, either. True, Branson and Orlyn's nonparty out-of-state status suggests a slight burden that "weighs against disclosure." *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) *accord In re: Mod. Plastics Corp.*, 890 F.3d at 251. But Defense Counsel has provided that both Branson and Orlyn's depositions may occur virtually over Zoom, and will be limited to two hours. ECF Nos. 127 at PageID.11394; 127-4 at PageID.11439. Although Branson and Orlyn's retained Counsel responded that two hours is too long, ECF No. 127-4 at PageID.11436–37, this Court has held that even a three-hour virtual deposition is not unduly burdensome for a nonparty to attend, so long as the testimony to be elicited is relevant to the case. *Howard Univ. v. Borders*, 2021 WL 1614395, at *2 (E.D. Mich. Apr. 26, 2021); *see also Chen v. Fed. Bureau of Investigation*, No. 22-MC-0074 (CRC), 2022 WL 17851618, at *6 (D.D.C. Oct. 18, 2022) (denying nonparty's motion to quash when they did not show "that a two-hour virtual deposition . . . would cause . . . any undue burden"); *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC (LB), 2022 WL 789125, at *2 (N.D. Cal. Mar. 14, 2022) (noting proposed virtual depositions "would be less burdensome than an in-person deposition, and this fact militates in favor of denying the motion to quash").

In conclusion, the information Defendants seek to compel through Branson and Orlyn's deposition is relevant, is not needlessly cumulative, and cannot be obtained from a more convenient source. And neither Branson nor Orlyn have shown that a two-hour virtual deposition would be unduly burdensome.

### IV.

Accordingly, it is **ORDERED** that nonparty Ryan Branson's Motion to Quash, ECF No. 115, is **DENIED.**

Further, it is **ORDERED** that nonparty Orlyn Shupe's Motion to Quash, ECF No. 116, is **DENIED.**

Further, it is **ORDERED** that Defendants may virtually depose Ryan Branson and Orlyn Shupe, so long as those depositions last no more than two hours and are limited to inquiring about Plaintiff Shupe's conversations about and investments in Rocket stock.

**This is not a final order and does not close the above-captioned case.**

Dated: September 30, 2024                              <u>s/Thomas L. Ludington</u>
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge