**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas
Christine M. Fox
Jake Bissell-Linsk
David Saldamando
140 Broadway
New York, NY 10005
cvillegas@labaton.com
cfox@labaton.com
jbissell-linsk@labaton.com
dsaldamando@labaton.com

*Lead Counsel for Lead Plaintiff Carl Shupe,*
*Plaintiff Construction Laborers Pension Trust*
*for Southern California, and the Proposed Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

|  |  |
|---|---|
| CARL SHUPE and CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiffs,<br><br>vs.<br><br>ROCKET COMPANIES, INC., JAY D. FARNER, DANIEL GILBERT, and ROCK HOLDINGS INC.,<br><br>                       Defendants. | Civil Action No. 1:21-cv-11528<br><br>Honorable Thomas L. Ludington District Judge<br><br>Honorable Anthony P. Patti Magistrate Judge<br><br>October 15, 2024 |

## NOTICE OF PLAINTIFF SOCAL'S MOTION FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION, OR IN THE ALTERNATIVE, LIMITED MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING CLASS CERTIFICATION OF THE INSIDER TRADING CLASS

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that Plaintiff Construction Laborers Pension Trust for Southern California ("SoCal") hereby moves this Court for leave to file a renewed motion for class certification (pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(g)), pursuant to the Court's authority under Rule 23(c)(1)(C) to consider such renewed motions.

In the alternative, pursuant to Rule 7.1(h)(2)(A) of the Local Rules for the Eastern District of Michigan ("Local Rules"), SoCal moves for limited reconsideration of the Court's order (ECF No. 227) denying Plaintiffs' motion for class certification (ECF No. 111), only as to portions of that opinion related to the insider trading subclass.

Pursuant to the Local Rule 7.1(a), Plaintiff's counsel met and conferred with Defendants' counsel concerning this motion on October 11, 2024, and Defendants' counsel indicated Defendants would not consent to the motion.

In support of this Motion, SoCal submits the accompanying Memorandum of Law.

DATED: October 15, 2024

Respectfully submitted,

*/s/ Carol C. Villegas*
**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas
Christine M. Fox
Jake Bissell-Linsk
David Saldamando
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
cfox@labaton.com
jbissell-linsk@labaton.com
dsaldamando@labaton.com

*Lead Counsel for the Proposed Class and*
*Counsel for Plaintiff Construction Laborers*
*Pension Trust for Southern California*

**LEVI & KORSINSKY LLP**
Shannon Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com

*Additional Counsel for Plaintiff and the*
*Proposed Class*

**SCHENK & BRUETSCH PLC**
James Allen
West Fort Street, Suite 1410
Detroit, MI 48226
Telephone: (313) 774-1000
james.allen@sbdetroit.com

*Liaison Counsel for Plaintiff and the*
*Proposed Class*

**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas
Christine M. Fox
Jake Bissell-Linsk
David Saldamando
140 Broadway
New York, NY 10005
cvillegas@labaton.com
cfox@labaton.com
jbissell-linsk@labaton.com
dsaldamando@labaton.com

*Lead Counsel for Lead Plaintiff Carl Shupe,*
*Plaintiff Construction Laborers Pension Trust*
*for Southern California, and the Proposed Class*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

| | |
|---|---|
| CARL SHUPE and CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ROCKET COMPANIES, INC., JAY D. FARNER, DANIEL GILBERT, and ROCK HOLDINGS INC., <br><br> Defendants. | Civil Action No. 1:21-cv-11528 <br><br> Honorable Thomas L. Ludington United States District Judge <br><br> Honorable Anthony P. Patti Magistrate Judge <br><br> October 15, 2024 |

**PLAINTIFF SOCAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION, OR IN THE ALTERNATIVE, LIMITED MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING CLASS CERTIFICATION OF THE INSIDER TRADING CLASS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................... vii

STATEMENT OF MOST CONTROLLING AUTHORITIES ........................ viii

I.    PRELIMINARY STATEMENT ..................................................1

II.   ARGUMENT.............................................................................2

    A.   Granting Leave to File a Renewed and Substantially
        Narrowed Motion for Class Certification Is Appropriate ....................2

        1.   Renewed Motions for Class Certification Are
            Subject to a Permissive Discretionary Standard
            Favoring the Certification of Viable Class Actions....................2

        2.   The Proposed Motion Cures Each Issue That
            Brought the Court to Deny the Class Cert. Motion ....................5

            (a)   The Proposed Motion Would Cure Any
                    Issues Concerning "Reliance" ..........................................5

            (b)   The Proposed Motion Would Cure Any
                    Issues Concerning Mr. Shupe's Adequacy....................11

            (c)   The Proposed Motion Would Cure Any
                    Issues Concerning Ascertainability ...............................11

            (d)   The Proposed Motion Would Cure Any
                    Issues Concerning SoCal's Adequacy...........................15

                (i)    The Significance of SoCal's Errors Would
                        be Eliminated By the Proposed Motion ...............16

                (ii)   SoCal Demonstrated Adequate Knowledge.........17

                (iii)  SoCal's Errors Are Understandable ....................21

         3.   The Proposed Motion Would Satisfy Rule 23 ..........................24

    B.   In the Alternative, Limited Reconsideration Should Be
        Granted ..........................................................................................24

III.  CONCLUSION.............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca v. Werner Enters., Inc.*,
  2018 WL 1136061 (D. Neb. Feb. 28, 2018)......................................................15

*Abraham v. WPX Energy Prod., LLC*,
  322 F.R.D. 592 (D.N.M. 2017).............................................................................3

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)........................................................................................9, 10

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)............................................................................................14

*B & R Supermarket, Inc. v. Mastercard Int'l, Inc.*,
  2021 WL 234550 (E.D.N.Y. Jan. 21, 2021).......................................................15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) .................................................................................22

*Beach v. Healthways, Inc.*,
  2009 WL 650408 (M.D. Tenn. Mar. 9, 2009)......................................................6

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011) ..................................................................6

*In re BP p.l.c. Sec. Litig.*,
  2014 WL 2112823 (S.D. Tex. May 20, 2014), *aff'd sub. nom.*,
  *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015) ......................................3, 4

*Chiarella v. United States*,
  445 U.S. 222 (1980)............................................................................................10

*Cole v. City of Memphis*,
  839 F.3d 530 (6th Cir. 2016) ..............................................................................12

*In re Connetics Corp. Sec. Litig.*,
  2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ...................................................13

*Crews v. Rivian Auto., Inc.*,
  2024 WL 3447988 (C.D. Cal. July 17, 2024).....................................................20

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D 113 (S.D.N.Y. 2001) ..................................................................22

*In re Cypress Semiconductor Sec. Litig.*,
  836 F. Supp. 711 (N.D. Cal. 1993) ..........................................................13, 14

*Dougherty v. Esperion Therapeutics, Inc.*,
  2020 WL 6793326 (E.D. Mich. Nov. 19, 2020)..........................................19

*Elster v. Alexander*,
  1982 U.S. Dist. LEXIS 18214 (N.D. Ga. Mar. 23, 1982) ...............................3

*In re Envision Healthcare Corp. Sec. Litig.*,
  2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019)....................................6, 7, 8

*Gentry v. Kostecki*,
  2021 WL 1428187 (D. Colo. Apr. 14, 2021) ..........................................14, 15

*Grossman v. First Pa. Corp.*,
  1991 WL 222071 (E.D. Pa. Oct. 23, 1991) ...................................................20

*Gruber v. Gilbertson*,
  2019 WL 4439415 (S.D.N.Y. Sept. 17, 2019) ...............................................12

*Gruber v. Gilbertson*,
  2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019) .................................................7

*Hargrove v. Sleepy's LLC*,
  974 F.3d 467 (3d Cir. 2020) ............................................................................4

*Hatcher v. Collecto, Inc.*,
  2021 WL 765759 (D. Del. Feb. 26, 2021).....................................................15

*Innovate 2 Corp. v. Motorsport Games Inc.*,
  2022 WL 903801 (D. Del. Mar. 28, 2022) ....................................................10

*In re Ins. Mgmt. Sols. Grp., Inc. Sec. Litig.*,
  206 F.R.D. 514 (M.D. Fla. 2002) ..................................................................20

*In re IPO Sec. Litig.*,
  483 F.3d 70 (2d Cir. 2007) ..............................................................................3

*Issen v. GSC Enters., Inc.*,
  522 F. Supp. 390 (N.D. Ill. 1981)....................................................................4

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ...................................................................7

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) .................................................20

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
    40 F. Supp. 3d 332 (S.D.N.Y. 2014) .....................................................7

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................9, 10

*Lamartina v. VMware, Inc.*,
    2023 WL 2763541 (N.D. Cal. Mar. 31, 2023) ...................................13

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
    601 U.S. 257 (2024) ........................................................................23, 24

*Mednick v. Precor, Inc.*,
    2017 WL 2619139 (N.D. Ill. June 16, 2017) .....................................15

*MicroCapital Fund LP v. Conn's Inc.*,
    2019 WL 3451153 (S.D. Tex. July 24, 2019), *R&R adopted by*
    2019 WL 4673209 (S.D. Tex. Sept. 24, 2019) ..................................13

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
    332 F.R.D. 556 (M.D. Tenn. 2019) .......................................................2

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
    559 F. Supp. 800 (S.D. N.Y. 1983) .....................................................14

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ...................................................6

*In re Oxford Health Plans, Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ......................................................6, 13

*In re Petco Animal Supplies Inc. Sec. Litig.*,
    2006 WL 6829623 (S.D. Cal. Aug. 1, 2006) .....................................14

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
    292 F.R.D. 515 (N.D. Ohio 2013) ................................................20, 21

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004) .................................................................2, 19

*Rensel v. Centra Tech, Inc.*,
  2021 WL 4134984 (S.D. Fla. Sept. 10, 2021) .......................................................3

*Sawant v. Ramsey*,
  570 F. Supp. 2d 336 (D. Conn. 2008)....................................................................6

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020)..........................................................................12

*SEC v. Contrarian Press, LLC*,
  2019 WL 1172268 (S.D.N.Y. Mar. 13, 2019)........................................................8

*SEC v. Morgan Keegan & Co.*,
  678 F.3d 1233 (11th Cir. 2012) .............................................................................8

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ..........................................................................18, 19

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
  186 F.3d 157 (2d Cir. 1999) ...................................................................................9

*Speerly v. Gen. Motors, LLC*,
  343 F.R.D. 493 (E.D. Mich. 2023), *aff'd*, 115 F.4th 680 (6th Cir.
  2024) .....................................................................................................................19

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) ...................................................................................23

*In re Synchrony Fin. Sec. Litig.*,
  2023 WL 1503032 (D. Conn. Feb. 3, 2023).....................................................11, 12

*In re Theragenics Corp. Sec. Litig.*,
  205 F.R.D. 687 (N.D. Ga. 2002) ..........................................................................21

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,
  2018 WL 6819331 (D.N.J. Dec. 28, 2018)............................................................3

*Trosper v. Stryker Corp.*,
  2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) .....................................................21

*United States v. Maria*,
   186 F.3d 65 (2d Cir. 1999) ................................................................8

*In re Upstart Holdings, Inc. Sec. Litig.*,
   2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ..................................6

*Wells v. HBO & Co.*,
   1991 WL 131177 (N.D. Ga. Apr. 24, 1991)......................................20

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   302 F.R.D. 448 (N.D. Ohio 2014) ......................................................2

**Statutes & Rules**

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j .................*passim*

Securities Exchange Act of 1934, Section 20A, 15 U.S.C. § 78t-1 ...............*passim*

Securities Exchange Act of 1934, Section 20(a) 15 U.S.C. § 78t(a).......................8

Federal Rules of Civil Procedure Rule 16(b)(4)........................................................4

Federal Rules of Civil Procedure Rule 23 .........................................................*passim*

SEC Rule 10b-5 ......................................................................................................*passim*

**Other Authorities**

Matthew Bender, *INSIDER TRADING* § 4.07 (2013)...............................................6

1 Newberg, *Newberg on Class Actions* § 3.33 (4th ed. 2003)................................19

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should provide SoCal leave to file a renewed motion for class certification, which would pursue a substantially narrowed class exclusively focused on insider trading claims, based on a class definition that explicitly defines a four day class period (3/29/21 – 4/1/21) as to those claims, in light of: (1) the lenient standard applicable to renewed motions for class certification; (2) the ability of such a renewed motion to cure the issues that the Court found deficient in the prior class certification motion, including issues concerning reliance, ascertainability, and SoCal's adequacy; and (3) the ability of such renewed motion to satisfy the remaining Federal Rule of Civil Procedure 23 ("Rule 23") requirements.

2.      Whether, in the alternative, the Court should reconsider its denial of the prior class certification motion as relevant to the insider trading claims.

## STATEMENT OF MOST CONTROLLING AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
     406 U.S. 128 (1972)

*Cole v. City of Memphis*,
     839 F.3d 530 (6th Cir. 2016)

*Senter v. Gen. Motors Corp.*,
     532 F.2d 511 (6th Cir. 1976)

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
     186 F.3d 157 (2d Cir. 1999)

*Hargrove v. Sleepy's LLC*,
     974 F.3d 467 (3d Cir. 2020)

*Dougherty v. Esperion Therapeutics, Inc.*,
     2020 WL 6793326 (E.D. Mich. Nov. 19, 2020)

*Rankin v. Rots*,
     220 F.R.D. 511 (E.D. Mich. 2004)

**Rules**

Federal Rules of Civil Procedure Rule 23

**Statutes**

The Securities Exchange Act of 1934; Sections 10(b) and 20A

## I.       PRELIMINARY STATEMENT

Plaintiff SoCal seeks leave to file a substantially narrowed motion for class certification (the "Proposed Motion"), which would cure the issues that the Court found to be deficient in the prior motion for class certification.  ECF No. 111 (the "Class Cert. Motion").   Permitting renewed motions for class certification is common, and appropriate here, as it would serve the interest of Rule 23 by permitting a viable Class to pursue strong claims that will otherwise likely go unremedied.

The Class Cert. Motion sought to certify a primary class as to claims for alleged misstatements under Section 10(b) ("§10(b)") of the Securities Exchange Act of 1934 (the "Exchange Act").  It also sought to certify a subclass as to claims for insider trading under §10(b) and Section 20A of the Exchange Act ("§20A").

Class certification was denied for four reasons: (1) an inability to establish the "reliance" element of the §10(b) misstatement claims; (2) the inadequacy of Mr. Shupe to represent the §10(b) misstatement class; (3) a lack of ascertainability as to the insider trading subclass; and (4) the inadequacy of SoCal to represent the insider trading subclass.  ECF No. 227 (the "Order").

The Proposed Motion would cure these issues by proposing a single Class, represented by SoCal, ***exclusively*** to pursue the insider trading claims, pursuant to a concrete definition.   In this context, the issue of SoCal's adequacy would be substantially reframed and SoCal is clearly adequate in this reframed context.

## II.   ARGUMENT[1]

Both the primary and alternative relief sought herein aim to achieve the same result: a path to certify a narrowed class, limited to insider trading claims.

### A.   Granting Leave to File a Renewed and Substantially Narrowed Motion for Class Certification Is Appropriate

This Section first addresses the permissive legal standard relevant to renewed motions for class certification.   The critical consideration under that standard is whether the Proposed Motion would be futile.   As such, the remainder of this Section addresses the reasons a renewed motion would ultimately be meritorious.

#### 1.   Renewed Motions for Class Certification Are Subject to a Permissive Discretionary Standard Favoring the Certification of Viable Class Actions

"The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and to the courts." *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 566 (M.D. Tenn. 2019).   As such, courts should "err" in favor of allowing a class. *Rankin v. Rots*, 220 F.R.D. 511, 517 (E.D. Mich. 2004).   Indeed, "it is an extreme step" to bar class treatment, "where a 'potentially proper class' exists and can easily be created." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 459 (N.D. Ohio 2014). "Thus, if possible, modification of the class definition, or use of subclasses, is generally preferred" over outright denial of class certification. *Id.*

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

In light of this, many courts have used their "ample discretion" to affirm a renewed motion for class certification following an initial denial. *See In re IPO Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (additionally finding that "a district court's authority to revise a class certification ruling" does not require a "without prejudice" reservation of authority); *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2018 WL 6819331, at *2 (D.N.J. Dec. 28, 2018) (finding that "[Rule] 23(c)(1)(C) ***expressly*** allows courts to alter or amend orders granting or denying class certification 'prior to the entry of final judgment[,]'" and that "it is not uncommon for district courts to permit renewed certification motions that set out a narrower class definition or rely upon different . . . legal theories") (citing cases).

"Even after courts have denied a plaintiff's first attempt at class certification, courts allow plaintiffs to propose a refined class definition or different claims in an attempt to certify a different class than the one originally proposed." *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 610 (D.N.M. 2017) (finding also that a plaintiff need not conform a renewed class definition to the pleadings).[2]

---

[2] Permitting such motions is common in securities fraud cases. *See, e.g.*, *IPO*, 483 F.3d at 73 (authorizing plaintiffs to "return[] to the [d]istrict [c]ourt to seek certification of a more modest class"); *Elster v. Alexander*, 1982 U.S. Dist. LEXIS 18214, at *15 (N.D. Ga. Mar. 23, 1982) (granting renewed motion for certification after the plaintiff dropped all claims other than SEC Rule 10b-5 claims "to eliminate the [c]ourt's previous objections to class certification"); *Rensel v. Centra Tech, Inc.*, 2021 WL 4134984, at *4 (S.D. Fla. Sept. 10, 2021) (granting renewed motion for class certification after plaintiffs dropped a class representative); *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *1 (S.D. Tex. May 20, 2014) (partially granting

*(Footnote continued on next page…)*

Courts review such motions under the same standard they would apply on an initial motion for class certification. As the Third Circuit stated in its recent and well-reasoned *Hargrove v. Sleepy's LLC* opinion:

> [T]he Court should not have treated the renewed motion for class certification as a motion for reconsideration. "An order that grants or denies class certification may be altered or amended before final judgment." [Rule 23](c)(1)(C). Courts cannot graft onto that provision the heightened motion-for-reconsideration standard requiring that, in addition to satisfying the typical Rule 23 criteria, plaintiffs show there was a change in controlling law, new evidence, or a clear error. *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). District courts should treat renewed motions for class certification as they would initial motions under Rule 23.

974 F.3d 467, 470 (3d Cir. 2020). Notably, *Hargrove* found that Rule 23(c)(1)(C) "allows for multiple bites at the [class certification] apple throughout the litigation," and found that—as here—"[p]laintiffs can succeed on a renewed motion for class certification if they more clearly define[d] their proposed class even if there has been no change in the law or no new evidence produced." *Id.* at 476-77.[3]

---

renewed motion for class certification), *aff'd sub. nom.*, *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015); *Issen v. GSC Enters., Inc.*, 522 F. Supp. 390, 400 (N.D. Ill. 1981) (granting renewed, "narrower" motion for class certification).

[3] Further, to the extent Rule 16(b)(4) of the Federal Rules of Civil Procedure is implicated by Plaintiffs' renewed motion, good cause for slight modification of the case schedule exists here because: (1) there is no prejudice to Defendants, as no new discovery would be required in adjudicating the renewed class certification motion; (2) the potential class' interests in achieving class-treatment, which for many putative class members would provide their only means of recovery based on these strong claims, outweighs any burden of delay; and (3) the benefits of judicial economy and efficiency from class-treatment, as recognized by Rule 23, strongly outweigh any burdens caused by delay.

**2.      The Proposed Motion Cures Each Issue That Brought the Court to Deny the Class Cert. Motion**

The Proposed Motion would differ substantially from the Class Cert. Motion. Specifically, it would: (1) pursue only insider trading claims, as opposed to both misstatement and insider trading claims; (2) propose a single Class, without any subclass; (3) propose SoCal as the Class representative of that single class, without any continued, representative involvement of Mr. Shupe; and (4) more clearly define the Class as to those remaining insider trading claims.

The Class definition sought by the Proposed Motion would be: "all persons who purchased Rocket Class A Common Stock from March 29, 2021 through April 1, 2021, inclusive."  The Proposed Motion would clarify that the Class only seeks to pursue insider trading claims pursuant to §10(b) and §20A of the Exchange Act, dropping the misstatement claims, against Defendants.  This approach would cure all four reasons the Court denied the Class Cert. Motion.

**(a)      The Proposed Motion Would Cure Any Issues Concerning "Reliance"**

One reason the Court denied the Class Cert. Motion was that Plaintiffs could not establish the reliance element of their §10(b) misstatement claims on a class-wide basis.  Order at 17-53.  As a result, the Court found that individualized issues would have predominated, barring class certification. *Id*.  As discussed below, this ruling would be no impediment to the Proposed Motion.

5

Insider trading claims under §20A do not have a reliance element.  Matthew
Bender, *INSIDER TRADING* § 4.07 (2013) (By passing §20A, Congress "eliminated
any requirement for contemporaneous traders to demonstrate reliance."); *In re Bear
Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 508 (S.D.N.Y.
2011) (finding §20A claim without requiring reliance); *Sawant v. Ramsey*, 570 F.
Supp. 2d 336, 347 (D. Conn. 2008) (same); *In re Openwave Sys. Sec. Litig.*, 528 F.
Supp. 2d 236, 255-56 (S.D.N.Y. 2007) (same); *In re Oxford Health Plans, Inc.*, 187
F.R.D. 133, 144 (S.D.N.Y. 1999) (same).

Courts in this Circuit identify the elements of a §20A claim, without requiring
any showing of reliance.  *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810,
at *27 (S.D. Ohio Sept. 29, 2023) (§20A claims require a predicate violation of
§10(b) and "contemporaneous trading"); *In re Envision Healthcare Corp. Sec. Litig.*,
2019 WL 6168254, at *25 (M.D. Tenn. Nov. 19, 2019) (same); *Beach v.
Healthways, Inc.*, 2009 WL 650408, at *5-6 (M.D. Tenn. Mar. 9, 2009) (same).

For the avoidance of doubt, §20A claims require a predicate insider trading
*violation* of the Exchange Act (or associated rules), but that element is satisfied
where ***defendants' conduct*** constitutes such a violation—*e.g.*, trading on the basis
of material, nonpublic information ("MNPI") violates §10(b).  In other words, while
plaintiffs are required to plead a §10(b) *violation*, plaintiffs are not required to
establish a §10(b) *claim* (or the additional elements of such a claim, such as
"reliance"), in order to proceed on a §20A claim.

6

The significant distinction between a predicate violation and a predicate claim, as relevant to §20A, was thoroughly discussed in *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007). There, the Ninth Circuit noted that "the term 'violates' in [§]20A is crucial" in rejecting an argument that a §20A claim could not proceed in the absence of a well-pled and timely §10(b) claim. *Id.* Specifically, even though the statute of limitations had run on the §10(b) claim, plaintiffs could proceed under the longer statute of limitations applicable to §20A, because all that is required is a factual showing of defendants' *conduct* in violation of §10(b). *Johnson's* discussion of the distinction between a "violation" and a "claim," is particularly instructive:

> *Webster's* . . . defines the verb "violates" to mean breaking or disregarding the law. . . . When, for example, someone asks if a person "violated" the speeding law, she is ordinarily understood as inquiring whether that person disregarded the posted speed limit, not whether a timely action commenced or a successful prosecution resulted.

*Id*. at 781. This reasoning was also adopted within the Second Circuit in *Kaplan v. S.A.C. Cap. Advisors, L.P.*, which held that, to state a §20A claim, "a plaintiff need only allege **conduct** that violates the Exchange Act." 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014); *see Gruber v. Gilbertson*, 2019 WL 4458956, at *3 (S.D.N.Y. Sept. 17, 2019) ("§ 20A merely requires that an underlying violation of § 10(b) occurred. . . . Therefore, a plaintiff may state a § 20A claim without pleading a §10(b) claim."). And courts in this Circuit have adopted this framing, explaining that "[w]hen an insider trades in his company's stock, he has a duty to disclose any nonpublic, material information he knows about the company before trading. . . .

7

Failure to do so *constitutes a violation* of [§10(b)] that can serve as a predicate for a Section 20A claim." *Envision*, 2019 WL 6168254, at *25. Two additional observations solidify the point that §20A does not import a reliance element.

**First**, the SEC's prosecution of insider trading is premised on *violations* of §10(b). However, the SEC need not prove reliance, because reliance is not a facet of a §10(b) violation, only a §10(b) claim. *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) (The SEC need not prove reliance because "'reliance' does not bear on . . . whether the securities laws were violated."); *SEC v. Contrarian Press, LLC*, 2019 WL 1172268, at *4 (S.D.N.Y. Mar. 13, 2019) (stating that to plead a §10(b) "violation," the SEC must allege material falsity or omissions, scienter, and a connection to the purchase or sale of securities, but not reliance).

**Second**, comparing §20A with (coincidentally named) Section 20(a) ("§20(a)") of the Exchange Act highlights the difference between a violation and a claim. Under §20(a), anyone who "controls any person liable" under §10(b) "shall also be liable." 15 U.S.C. § 78t(a). This requires a primary finding of *liability*, which itself requires a primary *claim*. In contrast, §20A uses entirely different language—it doesn't require a primary finding of liability, but merely a predicate violation. *See United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) (using different words in the same statutory context suggests different meanings).

In summary, there is no prospect of "reliance" posing predominating, individualized issues as to the Proposed Motion because the insider trading claims

under §20A do not have a reliance element.  However, even if the Court were to read a reliance element into §20A, this would also not cause any predominating issues.

Insider trading claims are pure omission claims, and it is black letter law that one alleging a pure omission may rely on the *Affiliated Ute* doctrine to satisfy any reliance element of their claim.  The purpose of *Affiliated Ute* is to enable a plaintiff to satisfy the reliance element when one would otherwise be unable to do so, because one cannot directly rely on that which was not disclosed.  *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972).  Here, such reasoning clearly applies—*e.g.*, investors could not directly prove they relied on the non-disclosure of information presented in Rocket's Board materials.

While the Court previously declined to apply *Affiliated Ute*, that ruling was made when Plaintiffs were pursuing claims for both misstatements and insider trading, but, under the Proposed Motion, all misstatement claims would be dropped, and the case would focus exclusively on omissions-based insider trading claims.

When considering §10(b) insider trading claims, courts find *Affiliated Ute* applies because such claims are uncontroversially pure omission claims.  *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 173 (2d Cir. 1999) (*"Where the claim rests on an omission, however, reliance may be presumed upon a showing that the omitted information was material. . . .  This rule applies in the context of an insider trading claim.*"); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 311 F.R.D. 373, 381 (S.D.N.Y. 2015) (granting class certification as to insider trading

9

claims based on *Affiliated Ute* presumption); *Innovate 2 Corp. v. Motorsport Games Inc.*, 2022 WL 903801, at \*4 (D. Del. Mar. 28, 2022) (finding reliance element satisfied under *Affiliated Ute* and sustaining insider trading claims).

Indeed, *Affiliated Ute* is itself a proto-insider trading case.  It addressed whether defendants needed to reveal the existence of a market for the securities they were purchasing from plaintiffs. *Affiliated Ute*, 406 U.S. at 128.  The Court found a duty of disclosure arising from fiduciary duties (analogous to the duties imposed by insider trading law) and held that due to the omission, no proof of reliance was required.  *Id.* at 153-54; *see Chiarella v. United States*, 445 U.S. 222, 229 (1980) (seminal insider trading case stating *Affiliated Ute* followed "the same approach").

Finally, the Proposed Motion would also preserve the §10(b) insider trading claim.  This §10(b) claim would require a showing of reliance—as just discussed, these claims are entitled to proceed under the *Affiliated Ute* doctrine.[4]

---

[4] Notably then, a finding that *Affiliated Ute* applies is a precursor to the §10(b) insider trading claims, but not the §20A insider trading claims.  If the Court accepts that §20A claims require only a predicate *violation* (not a predicate *claim*), then "reliance" would be irrelevant to the §20A claim, and the §10(b) claim would be superfluous (and thus could not create predominating issues).  Thus, the only way that reliance could cause predominating issues would be if the Court found ***both*** that (1) §20A requires a predicate *claim* and thus imports a reliance requirement (contrary to the law cited herein) and (2) the *Affiliated Ute* doctrine does not apply to the insider trading claims (contrary to the law cited herein).

### (b)   The Proposed Motion Would Cure Any Issues Concerning Mr. Shupe's Adequacy

The Court found Mr. Shupe to be an inadequate class representative, based on concerns about his character arising from errors in his PLSRA certifications.  Order at 70-76.  A corrected certification was filed promptly after Lead Counsel learned of the prior errors following document collection in discovery (ECF No. 73-1), but the Court held that the errors, along with Mr. Shupe's testimony about those errors, rendered him an inadequate class representative.  Order at 70-76.

This issue would be entirely resolved by the Proposed Motion.  Mr. Shupe would no longer seek to serve as a class representative.

### (c)   The Proposed Motion Would Cure Any Issues Concerning Ascertainability

The ascertainability of the Class would be easily demonstrated.  To explain this, it is helpful to summarize the prior briefing on this issue.

In opposition to the previously withdrawn class certification motion (ECF No. 74), Defendants challenged the proposed insider trading subclass' definition by arguing it was impermissibly vague because (1) the definition hinged on the term "contemporaneous," and (2) the period of time corresponding to that term is uncertain.  *See* ECF No. 82 at 44-45.

Notably, the entirety of the subclass would have fallen within the primary class definition, and inclusion in the subclass could be verified based on trading records ordinarily collected in securities class actions upon settling the appropriate

11

definition of "contemporaneous." *See generally In re Synchrony Fin. Sec. Litig.*, 2023 WL 1503032, at *7 (D. Conn. Feb. 3, 2023) (ascertainability satisfied where membership of class may be "readily determined from investor records"). Plaintiffs believed this went a long way toward establishing that the subclass definition was "sufficiently definite so that it [would be] administratively feasible" to proceed as a class. *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

Indeed, courts routinely certify classes using similar language. *E.g.*, *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 286 (N.D. Cal. 2020) (certifying class of: "all persons who purchased Symantec common stock contemporaneously with any sales of Symantec common stock by [defendant] during the [c]lass [p]eriod"); *Gruber v. Gilbertson*, 2019 WL 4439415, at *9 (S.D.N.Y. Sept. 17, 2019) (certifying subclass defined as: "investors who purchased [c]ompany stock contemporaneously with defendants"). In their reply brief to the previously withdrawn class certification motion, Plaintiffs cited authority for the proposition that "[c]onsiderations such as the proper definition of 'contemporaneous' . . . are properly reserved for later stages of litigation—and do not preclude certification." ECF No. 103 at 29 (quoting *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 299 (D. Md. 2022)).

Subsequent to that briefing, the Court permitted the substitution of SoCal into the case to replace the previously proposed subclass representative, Matthew Pearlman. Upon Plaintiffs' renewed motion for class certification, Defendants did not challenge ascertainability and, as such, Plaintiffs' reply did not address the issue.

12

Nevertheless, the Court *sua sponte* found—similarly to Defendants' prior, abandoned argument—that the term "contemporaneous" was too vague.  Order at 60-61.  This issue would be cured by the Proposed Motion, because it uses a far more concrete class definition that expressly states the relevant time period.

Specifically, Plaintiffs propose a class definition of all persons who purchased Rocket Class A Common Stock following Defendant RHI's Sale on March 29, 2021 through April 1, 2021, inclusive.  The new proposed class definition resolves any ascertainability concern, as it provides a fixed period of time (four days), and a person's inclusion in the class can be determined based on their trading records.

The prior use of the term "contemporaneous" was selected because a claim under §20A requires "contemporaneous" trading.  As the Order recognized, the appropriate length of time for contemporaneous trading is not well settled.  Order at 60-61.  Specifically, the Court noted that "most [courts] agree that a trade is made 'contemporaneously' for the purposes of § 20A if it is made 'within a few days' or the 'day after' the alleged insider trade."  *Id.* at 61.  (citation omitted).[5]

---

[5] Many courts have found periods of four days or longer to satisfy the contemporaneous trading requirement.  *See, e.g.*, *Lamartina v. VMware, Inc.*, 2023 WL 2763541, at *19 (N.D. Cal. Mar. 31, 2023) ("[T]he Court finds ample precedent in this circuit for a finding that a four-day trading gap may be considered contemporaneous."); *MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *24 (S.D. Tex. July 24, 2019) (four days), *R&R adopted by* 2019 WL 4673209 (S.D. Tex. Sept. 24, 2019); *Oxford*, 187 F.R.D. at 144 (five days); *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *14-15 (N.D. Cal. Aug. 14, 2008) (four or five days); *In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711, 714 (N.D. Cal.
(*Footnote continued on next page…*)

13

Thus, the new proposed definition corresponds to the outer bounds of the Court's reference to "a few days." *Id*. at 60-61 (citation omitted). If the definition of "contemporaneous" is determined through subsequent litigation to be narrower than the four day period that would be included within the *class*, this would not pose an ascertainability problem. Such narrowing would not in any way make it difficult to *ascertain* if a person is in or out of the class, as defined.

Rather, it would merely mean that some members of the class would be unable to establish a viable claim—*i.e.*, they would fit within the class definition but would not be a contemporaneous trader. That prospect is of no issue because the *success* of class members' claims is irrelevant to the appropriateness of class treatment. *See generally Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). By analogy, misstatement claims ordinarily cover all purchasers within a given period, but many investors may ultimately lack a viable claim.

Therefore, the Proposed Motion would cure the Court's prior concerns about ascertainability. As discussed in Section II(A)(1), courts readily permit renewed motions for class certification and doing so is particularly appropriate where the movant seeks to improve a class definition. *See e.g.*, *supra* at 3-4 (collecting cases); *Gentry v. Kostecki*, 2021 WL 1428187, at *4 (D. Colo. Apr. 14, 2021) (inviting a

---

1993) (five days); *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800, 805 n.5, (S.D. N.Y. 1983) (seven days); *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *37 (S.D. Cal. Aug. 1, 2006) (seven or eight days).

"renewed motion to certify . . . that addresses the identification and ascertainability of the class"); *Hatcher v. Collecto, Inc.*, 2021 WL 765759, at *5 (D. Del. Feb. 26, 2021) (inviting "renewed motion with . . . narrower class definition"); *B & R Supermarket, Inc. v. Mastercard Int'l, Inc.*, 2021 WL 234550, at *36 (E.D.N.Y. Jan. 21, 2021) (granting renewed motion that addressed ascertainability); *Abarca v. Werner Enters., Inc.*, 2018 WL 1136061, at *4 (D. Neb. Feb. 28, 2018) (granting renewed motion that included a "more narrowly defined" class in a labor action); *Mednick v. Precor, Inc.*, 2017 WL 2619139, at *2 (N.D. Ill. June 16, 2017) (granting renewal for class certification after plaintiffs "narrow[ed] the scope of their case").

### (d)   The Proposed Motion Would Cure Any Issues Concerning SoCal's Adequacy

The Court determined that SoCal was inadequate to represent the proposed insider trading subclass. Order at 77-82. The Proposed Motion would ***substantially reframe*** the issue of SoCal's adequacy, and with that reframing, the Court should find SoCal adequate to represent the single class that would remain in this case.

The Court previously recognized that the issue of SoCal's adequacy was a "closer call" than the issue of Mr. Shupe's adequacy (*id.* at 82), noted that SoCal had "diligently prosecuted" the case since becoming involved (*id.* at 78) and recognized that "nothing suggests SoCal's interests are misaligned with those of the proposed Subclass" (*id.*). However, the Court ultimately found issues with SoCal's adequacy based on its knowledge and understanding of the proposed subclass. *Id.*

In reaching that determination, the Court explained that inquiry into a proposed representative's knowledge turns on whether the representative would be "unable or unwilling to protect the interests of the class." *Id.* at 77 (citation omitted). The Court correctly noted that this is "***an incredibly low hurdle***." *Id.*

In finding that SoCal had failed to clear that low hurdle, the Court focused on deposition testimony in which SoCal's representative provided explanations of the insider trading claims that erred in certain respects. Specifically, the Court correctly found that SoCal erred by describing the claims they would represent as pertaining to "*misrepresentations*." *Id.* at 78 (emphasis in original) (citation omitted). The Court also cited instances of SoCal referring to "misrepresentations" in ways that it found to demonstrate an inadequate understanding of the "*differences* between the Subclass's contemporaneous trading claim and the Class's broader misrepresentation claims." *Id.* at 78-81 (emphasis in original).

### (i)     The Significance of SoCal's Errors Would Be Eliminated By the Proposed Motion

Upon the Proposed Motion, SoCal's ability to *distinguish* the "difference" between the misstatement and insider trading claims would no longer be present because misstatement claims will no longer be part of the case. While SoCal's errors in articulating such difference could still be relevant to assessing its overall understanding of the insider trading claims, the *significance* of being able to articulate *that* difference would be eliminated.

16

This new posture is particularly significant, because the Court's prior ruling was largely (or fully) animated by a concern about SoCal's specific role as a subclass representative.  For example, the Court observed that SoCal was named as a Plaintiff "***specifically***" to represent the subclass of insider trading claims.  Order at 79.  That discussion would have little bearing on whether SoCal meets any requisite knowledge requirement, unless the Court were indicating that its concern was with SoCal's ability to protect the interests of the subclass vis-à-vis the interest of the class.  The general requirement articulated by the Court, of knowledge sufficient to "protect the interests of the class" (*id.* at 77), incorporates a pragmatic consideration of what those interests are—and as to a subclass representative, such interest largely lies with protecting that subclass' ***unique*** interests, as *distinct* from the broader class.

The Proposed Motion would remove any concern as to whether SoCal can sufficiently attend to the *unique* interests of a subclass.

### (ii)    SoCal Demonstrated Adequate Knowledge

SoCal demonstrated knowledge of this litigation and involvement in prosecuting the case.  For example, it understood that discovery had been conducted (ECF No. 120-30 ("Tr.") at 145:7-9), the reasons why the previously proposed representative for the insider trading subclass withdrew from the case (*id.* at 158:2-8), and that SoCal and Mr. Shupe had "different [] claim[s]" (*Id.* at 186:3-4).  SoCal participated in discovery, including by preparing for its deposition (*Id.* at 22:20-24:4; 25:23-28:16), participating in document collection (*Id.* at 62:5-63:3; 105:19-22;

106:16-08:13), and verifying interrogatory responses (*Id.* at 67:1-69:2). SoCal representatives frequently speak with counsel concerning the case. *Id.* at 110:5-11:21, 161:10-24, 184:11-85:6. ***Most importantly***, SoCal stated that it understood its duty to be a "fiduciary" to those it represents. *Id.* at 134:3-8.

SoCal also demonstrated knowledge of the facts of the case. It understood that the case alleges insider trading claims. *Id.* at 134:9-11. SoCal also understood the claims involve "material nonpublic information." *Id.* at 140:5-9. While using imperfect language, SoCal correctly identified the subject matter of the alleged MNPI, stating it involved "the impact of interest rate increases." *Id.* at 143:25-44:9. It understood that a trade by RHI is at issue in this litigation, and that RHI is controlled by Dan Gilbert. *Id.* at 142:1-7. SoCal even understood that RHI's trade was a "block transaction," whereby "the broker took [the shares] in a private transaction and turned around and sold them." *Id.* at 142:12-43:5.

In the absence of any unique concerns arising specifically from SoCal's role as a *subclass* representative, this degree of knowledge and engagement would amply satisfy the standards applicable to evaluating a class representative's adequacy. The Sixth Circuit has not placed emphasis on a class representative's personal knowledge of the case. When stating what is required, the Sixth Circuit has explained:

> There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class ***through qualified counsel***.

*Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976);[6] *see also Rankin*, 220 F.R.D. at 520 ("[T]he Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff."); *Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *8 (E.D. Mich. Nov. 19, 2020) (similar).

Even if, contrary to the approach endorsed by *Senter*, one makes room for a knowledge inquiry, the Court already noted it must be understood as an "incredibly low hurdle." Order at 77. As *Dougherty* stated:

> Lead Plaintiffs demonstrate not only that they understand their fiduciary responsibilities as class representatives, but also that they have been adequately discharging those responsibilities *by* reviewing case documents, communicating with Class Counsel as necessary, and participating in discovery. Courts in this [C]ircuit have found plaintiffs adequate who do far less.

2020 WL 6793326, at *8. The Order (at 69-70) cited *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 507 (E.D. Mich. 2023), *aff'd*, 115 F.4th 680 (6th Cir. 2024), which recited the same two-factor analysis from *Senter*—which looks only to conflicts between the representative and the class and adequacy of counsel. Here, the Court recognized that Lead Counsel has "extensive experience" prosecuting securities cases (Order at 69-70), and found no conflict between SoCal and the class (*id.* at 78).

---

[6] The Sixth Circuit's articulation of the relevant criteria favors the position that adequacy turns on conflicts between class representatives and absent class members and "the experience of counsel," in the "disagreement" between that view, and the alternative view that requires a more probing inquiry into the representatives' knowledge. *See* 1 Newberg, *Newberg on Class Actions* § 3.33 (4th ed. 2003).

19

Many cases establish that a representative should not be disqualified merely because of errors in their understanding of the case. *See, e.g. In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 965 (N.D. Cal. 2022) (finding representative adequate despite finding that he "does not appreciate the nature of the class claims," where he testified the case concerned "previous cigarette smokers," when it concerned e-cigarettes); *In re Ins. Mgmt. Sols. Grp., Inc. Sec. Litig.*, 206 F.R.D. 514, 517 (M.D. Fla. 2002) (recognizing the representative need not "understand the details and means" by which the fraud occurred, because "courts look more at the willingness" to participate in the action, which may be "expressed merely by . . . compliance with discovery," and concluding "[m]inimal actions" may satisfy the requirement even if one does not "understand[] the exact nature of the wrong"); *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *5 (C.D. Cal. July 17, 2024) (representative adequate despite being "somewhat under-informed" and despite "a handful of flubbed responses" in a deposition); *Wells v. HBO & Co.*, 1991 WL 131177, at *6 (N.D. Ga. Apr. 24, 1991) ("Most courts . . . reject[] challenges to the adequacy of the representative based on his or her ignorance of the facts or theories of liability."); *Grossman v. First Pa. Corp.*, 1991 WL 222071, at *6 (E.D. Pa. Oct. 23, 1991) ("Rule 23(a)(4) does not require that this [c]ourt determine that the class representative knows each legal theory and it[s] respective facts . . . ."); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 520-21 (N.D. Ohio 2013) (rejecting argument that "plaintiffs lack knowledge about the case,"

20

because hiring adequate counsel provided "evidence that plaintiffs seek fairly and adequately to represent the proposed class members"); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002) (rejecting argument that plaintiffs were inadequate because they were "unfamiliar with the allegations," because such argument was "irrelevant in a fraud on the market case . . . prosecuted by able and experienced counsel"); and *Trosper v. Stryker Corp.*, 2014 WL 4145448, at *13 (N.D. Cal. Aug. 21, 2014) (certifying the class despite lead plaintiff's confusion about the subject matter of the case and core allegations).

### (iii)   SoCal's Errors Are Understandable

The Court recognized that, generally, a lack of knowledge or erroneous understanding will only raise an adequacy issue if "his ignorance unduly impacts his ability to vigorously prosecute the action."  Order at 77 (citation omitted).   In the context of the Proposed Motion, where only a single insider trading class will be pursued, the caselaw cited in Section II(A)(2)(d)(ii) firmly establishes that SoCal's errors should not be disqualifying.   However, that conclusion is substantially strengthened by considering the errors in context.

A lay person seeking to represent a class (or subclass) cannot be expected to perfectly articulate the distinction between insider trading claims and misstatement claims.  Here, SoCal's representative expressly stated that when he used the term "misrepresentation" he was not distinguishing between the omission-based insider trading claims and the (to-be-discontinued) misrepresentation claims.  After stating

21

that SoCal's claim concerned the "misrepresentation[s]," defense counsel asked, "but not the insider trading," and SoCal's representative stated, "***I guess, in my mind, they're the same thing***."  Tr. at 134:3-19.  The Court rebuked this, stating: "[t]hey are not the same thing."  Order at 80.  While the Court is absolutely correct, a lay person's inability to articulate the distinction does not constitute the sort of disinterest in the case that undermines adequacy.

**First**, the exercise of deposing a lay witness will often not invite their best explanation of complex issues.  Of course, a witness is expected to testify honestly and to the best of their ability.  And an attorney can be expected to articulate legal concepts effectively, but a class representative is not expected by the courts to have the same aptitude.  *Supra* at 18-21.[7]  Depositions serve a useful purpose in assessing conflicts and integrity, but they should not be treated as a legal knowledge or memory test.  Such a test—especially when administered by an aggressive or intimidating proctor—has little bearing on whether, in the context of private conversations with counsel, the representative would seriously engage with issues in the case or act as faithful fiduciaries.  Any deficiency in SoCal's explanations should be filtered through a lens focused on the representative's role.  *See id.*

---

[7] *See also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) ("The Supreme Court [has] expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D 113, 124 (S.D.N.Y. 2001) (same and rejecting attack on the "representatives' purported lack of knowledge," which centered "around their alleged inability to describe the legal claims").

**Second**, on the facts of this case, there was *absolutely* a connection between the misrepresentation and insider trading claims. Plaintiffs alleged that Defendants' misrepresentations were aimed at inflating Rocket's stock price, and that the insider trade occurred at a time when insiders obtained MNPI, most notably through Board materials that indicated the stock would precipitously fall. Plaintiffs also alleged a concrete connection between the misrepresentations and insider trading. *See* ECF No. 200 at 2-13 (Plaintiffs' summary judgment opposition, detailing factual context in which the insider trade occurred in tandem with the alleged misrepresentations).

It is understandable that a lay person would not parse the distinction between these two concurrent, alleged forms of fraud, notwithstanding their real differences.

**Third**, from a legal perspective, the distinction between misrepresentations and omissions is nuanced and challenging. This complexity is highlighted by the recent Supreme Court decision in *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257 (2024). Courts, including the Second Circuit, had long held that SEC Rule 10b-5(b) makes "material omissions actionable," including "pure omissions," such as the failure to make disclosures required by regulation. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 102 (2d Cir. 2015). In *Macquarie*, the Supreme Court examined SEC Rule 10b-5(b) and found that this long-recognized practice was erroneous under the "plain text" of the rule, as the rule only renders it illegal "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances

23

under which they were made, not misleading." 601 U.S. at 263. Thus, in a 9-0 ruling, the Supreme Court held that the Second Circuit erred in reading SEC Rule 10b-5(b) as permitting "pure omission" claims, as it actually only pertains to *statements* rendered misleading by omission.[8] *Id.*

The point here is that the Supreme Court is clearly *right* in its reading of SEC Rule 10b-5(b)—it does not apply to pure omissions. And yet, for years the esteemed judges of the Second Circuit mistakenly interpreted the rule to cover pure omissions. That experienced jurists and attorneys read SEC Rule 10b-5(b) as permitting omission claims highlights that a lay person's imperfect conflation of omission-based insider trading claims and misrepresentations is understandable.

### 3. The Proposed Motion Would Satisfy Rule 23

The remaining elements of Rule 23 will be easily satisfied by the Proposed Motion, and the Order suggests each element will be satisfied. Aside from the issues found deficient by the Court, every other element of Rule 23 was met by the Class Cert. Motion. No other issue would be *substantially* different on a renewed motion.

### B. In the Alternative, Limited Reconsideration Should Be Granted

To the extent the Court finds that the discretionary standards applicable to renewed motions (*see* Section II(A)(1)) do not apply or otherwise determines the prior Order bars the request for leave to file a renewed motion, Plaintiffs respectfully

---

[8] Notably, *Macquarie* expressly did not address SEC Rules 10b-5(a)/(c), such that this ruling has no effect on insider trading claims that arise under those subsections.

request that the Court reconsider the Order.  Reconsideration would be warranted under Rule 7.1(h)(2)(A) of the Local Rules as (1) the Court erred by not considering the prospect of certifying a modified class definition limited to the insider trading claims (*see generally* Section II(A)(1)); (2) the definition of the proposed subclass was reasonably ascertainable (*see* Section II(A)(2)(c)); and (3) the Court applied a knowledge requirement as to SoCal that exceeded the legal standards discussed herein (*see* Section II(A)(2)(d)).

## III.   CONCLUSION

For the reasons stated herein, the relief requested should be granted.

DATED: October 15, 2024

*/s/ Carol C. Villegas*
**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas
Christine M. Fox
Jake Bissell-Linsk
David Saldamando
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
cfox@labaton.com
jbissell-linsk@labaton.com
dsaldamando@labaton.com

*Lead Counsel for the Proposed Class and Counsel for Plaintiff Construction Laborers Pension Trust for Southern California*

Respectfully submitted,

**LEVI & KORSINSKY LLP**
Shannon Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com

*Additional Counsel for Plaintiff and the Proposed Class*

**SCHENK & BRUETSCH PLC**
James Allen
West Fort Street, Suite 1410
Detroit, MI 48226
Telephone: (313) 774-1000
james.allen@sbdetroit.com

*Liaison Counsel for Plaintiff and the Proposed Class*