UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,

                     Plaintiff,                     Case No. 1:21-cv-11528

v.                                      Honorable Thomas L. Ludington
                                           United States District Judge
ROCKET COMPANIES, INC., JAY FARNER,
DANIEL GILBERT, and ROCKET HOLDINGS, INC.,

                     Defendants.

_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO
FILE A RENEWED MOTION FOR CLASS CERTIFICATION, (2) DIRECTING
PLAINTIFF TO FILE SUPPLEMENTAL BRIEFING, AND (3) CLARIFYING THE
NEED FOR FURTHER PSLRA LEAD PLAINTIFF PROCEEDINGS**

       Carl Shupe and Construction Laborers Pension Trust for Southern California ("SoCal")

sought to certify a nationwide class of Rocket Companies, Inc. ("Rocket") shareholders alleging

that Rocket, its holding company Rocket Holdings, Inc. ("RHI"), its CEO Jay Farner, and its

founder Dan Gilbert, violated the Securities Exchange Act through fraudulent misrepresentations

and insider trading. Shupe sought to represent the broader Class, and SoCal sought to represent a

Subclass of those shareholders who traded "contemporaneously" with Defendant Gilbert's alleged

March 2021 insider trade.

       But, in late September 2024, this Court denied class certification. This Court concluded

that individual questions of investor reliance predominated throughout the broader class's

fraudulent misrepresentation claims. And this Court concluded both Shupe and SoCal were

inadequate representatives, for different reasons: Shupe was dishonest and SoCal was uninformed.

The pleadings since this decision have been puzzling. SoCal—but not Shupe—filed a hybrid motion. Primarily, the motion seeks leave to file a renewed motion for class certification. In that forthcoming renewed motion, SoCal explains, it will abandon all fraudulent misrepresentation claims and will instead seek to certify a "narrowed" class of only those Rocket shareholders who are able to advance the insider trading claims. Alternatively, SoCal seeks reconsideration of this Court's decision declining to certify the insider trading Subclass. Two days later SoCal—but not Shupe—filed a petition for a permissive interlocutory appeal in the Sixth Circuit, only to then immediately file a motion in the Sixth Circuit seeking to hold that petition in abeyance pending this Court's ruling on its hybrid motion for leave or reconsideration. And, nearly two months after this motion practice, the Parties filed a stipulation in this Court that, in part, voluntarily dismissed all of Shupe's claims.

As explained below, SoCal does not need this Court's leave to file a renewed motion for class certification. Civil Rule 23 permits a plaintiff to take multiple bites at the class-certification apple. But, in securities class actions, the Private Securities Litigation Reform Act (PSLRA) requires these bites to be taken by a designated lead plaintiff. SoCal is not a PSLRA lead Plaintiff. Carl Shupe was, before he dismissed his claims. So, if SoCal wishes to proceed with putative class allegations—despite this Court's prior denial and SoCal's pending appellate petition—PSLRA proceedings must be reopened.

## I.

This Court outlined all background facts and this case's complicated procedural posture in its September 2024 Opinion & Order denying class certification. *See Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 735, 752–60. Such background need not be recounted in full here. Only the key facts follow.

**A.**

In their amended February 2024 Complaint, Shupe and SoCal advanced four claims. In Count I, they alleged Defendant RHI committed insider trading when Defendant Gilbert—RHI's majority shareholder and Chairman—sold shares of Rocket Class A common stock on March 29, 2021 armed with material, non-public information about Rocket's financial forecast. *Id.* at 758–59 (enumerating "[t]en details" that "illustrate the unusual nature" of Gilbert's trade). In Count II, Shupe and SoCal alleged that SoCal—and other similarly situated shareholders—traded Rocket Class A common stock "contemporaneously" with Gilbert's insider trade such that they may recover from RHI under Section 20A of the Exchange Act. *Id.* at 759. In Count III, Shupe and SoCal alleged that Defendant Rocket— through its CEO Farner—defrauded the market in violation of the Exchange Act through a series of materially false and misleading statements that artificially inflated and maintained the prices of Rocket Class A common stock. *Id.*; *see also id.* at 756–57 (outlining Farner's alleged fraudulent misrepresentations). And, in Count IV, Shupe and SoCal alleged Defendants RHI and Gilbert effectively controlled Rocket, and are thus similarly liable for Farner's false and misleading misrepresentations as "controllers". *Id.* at 759.

These claims are summarized in the following table for clarity:

| Count | Claim | Defendants |
|---|---|---|
| I | Insider Trading; Section 10(b) and Rule 10b-5 of the Exchange Act | RHI |
| II | Private Right of Action For "Contemporaneous" Traders; Section 20A of the Exchange Act | RHI |
| III | Materially False and Misleading Statements; Section 10(b) and Rule 10b-5 of the Exchange Act | Rocket, Farner |
| IV | Materially False and Misleading Statements—Controller Liability; Section 20(a) of the Exchange Act | RHI, Gilbert |

On February 12, 2024, Shupe and SoCal sought class certification. ECF No. 111. Shupe sought to represent the following proposed Class:

> All persons and entities that purchased or otherwise acquired publicly traded Rocket Companies, Inc. ("Rocket" or the "Company") Class A common stock (NYSE: RKT) between February 25, 2021 and May 5, 2021, inclusive (the "Class Period"), and were damaged thereby[.] Excluded from the Class are: (a) Defendants;1 (b) members of the immediate families of Defendants; (c) the subsidiaries and affiliates of Defendant Rocket and Defendant RHI; (d) any person who is an officer, director, or controlling person of Rocket; (e) any entity in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors, or assigns of any such excluded party.

ECF No. 111 at PageID.8589. And, relevant to the §20A insider trading claim for "contemporaneous" traders—Count II—SoCal sought to represent the following proposed Subclass:

> All persons and entities within the Class that purchased publicly traded Rocket Class A common stock contemporaneously with Defendant Gilbert's and Defendant RHI's sale of Rocket Class A common stock on March 29, 2021[.] Excluded from the Subclass are: (a) Defendants; (b) members of the immediate families of Defendants; (c) the subsidiaries and affiliates of Defendant Rocket and Defendant RHI; (d) any person who is an officer, director, or controlling person of Rocket; (e) any entity in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors, or assigns of any such excluded party.

*Id.* at PageID.8589–90.

### B.

But, on September 30, 2024, this Court concluded Shupe and SoCal "c[a]me up short" and that the Proposed Class and Subclass only satisfied three of the seven Rule 23 requirements for class certification.[1] *Shupe*, 752 F. Supp. 3d. at 752. Each of the four requirements Shupe and SoCal failed to satisfy will be summarized in turn.

### 1. Rule 23(b)(3) Predominance

Start with Civil Rule 23(b)'s "crucial" requirement that common questions of law and fact "predominate" over individual questions asserted by members of the putative class. *Id.* at 761–62;

---

[1] This Court concluded that the proposed Class and Subclass satisfied Civil Rule 23(a)'s numerosity, commonality, and typicality requirements. *See Shupe*, 752 F. Supp. 3d at 787–91.

FED. R. CIV. P. 23(b). In this case, like many other class actions alleging Section 10(b) fraudulent misrepresentations, predominance largely turned on plaintiffs' ability to rely on the "fraud-on-the-market" theory of class-wide reliance articulated by the Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988).

### a.

Outside the class context, a Section 10(b) fraudulent misrepresentation plaintiff must prove, among other elements, that they *relied* on the alleged fraudulently material misrepresentation when trading. *Id.*; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) [hereinafter *Halliburton II*] ("The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement" and purchased or sold stock "based on that specific misrepresentation."). But, in *Basic*, the Supreme Court "recognized that requiring proof of direct reliance would practically preclude securities class actions, because individualized issues of reliance would necessarily overwhelm common questions of law and fact." *Shupe*, 752 F. Supp. 3d at 762. So, the Supreme Court promulgated the fraud-on-the-market theory as a "judicial fix." *Id.* The theory goes something like this: in "well-developed markets," "the market price of shares . . . reflects all publicly available information" including "any material misrepresentations." *Basic*, 485 U.S. at 246. So, "courts can presume—subject to rebuttal—that investors rely on public misstatements whenever he or she 'buys or sells stock at the price set by the market.'" *Shupe*, 752 F. Supp. 3d at 762 (quoting *Basic*, 485 U.S. at 244).

To invoke the *Basic* fraud-on-the-market presumption or reliance, a plaintiff must prove (1) the alleged misrepresentations were publicly known, (2) the alleged misrepresentations were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed. *Halliburton II* at 277–

78. And "at the class certification stage, a plaintiff must *prove*—as opposed to *plead*—all elements other than materiality." *Shupe* 752 F. Supp. 3d at 763 (citing *Halliburton II* at 276, 283). But this presumption is rebuttable. So, "even if a plaintiff proves market efficiency, misrepresentation publicity, and trading timing at the class certification stage, defendants may rebut the *Basic* presumption by proving—by a preponderance of the evidence—that the alleged misrepresentations had no price impact." *Id.* (citing *Halliburton II* at 280); *see also Basic*, 485 U.S. at 258 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade . . . will be sufficient to rebut the presumption of reliance.").

### b.

This Court concluded that Shupe and SoCal sufficiently invoked the fraud-on-the-market presumption, but that Defendants sufficiently rebutted it.

The only disputed issue regarding Plaintiff's ability to *invoke* the presumption was whether Rocket Class A common stock traded on an "efficient market" throughout the class period. *Shupe* 752 F. Supp. 3d at 763. This Court dedicated 15 pages of its Opinion to analyzing the eight established market-efficiency factors, as well as four additional factors proposed by the Parties' economic experts. *See id.* at PageID.763–78 (noting "there is no bright-line test for market efficiency" and that the eight factors the Sixth Circuit historically applies "are not exhaustive nor dispositive"). This Court concluded that at least eleven of the twelve factors suggested that Rocket stock traded on an efficient market throughout the proposed Class Period. *See id.* In so doing, this Court rejected Defendants' argument that the market was inefficient because Rocket stock was traded as a "meme" during a "social media frenzy." *Id.* at 776–78. ("At bottom, those who may have invested in Rocket as part of the social media frenzy on March 2 and 3, 2021 were 'value

investors'—who 'attempt[ed] to beat the market' by investing in Rocket stock—a stock they believe was 'undervalued' or heavily shorted at the time. *Halliburton II* at 273. But the Supreme Court has repeatedly recognized that value investors do *not* undermine market efficiency.").

Although Shupe and SoCal invoked the fraud-on-the-market presumption, Defendants *rebutted* it in two ways. First, as in *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113 (2021), there was a "considerable mismatch" between the *generic* nature of Defendant Farner's alleged misrepresentations and the *specific* nature of Rocket's subsequent corrective disclosures. *Shupe*, 752 F. Supp. 3d at 781 (comparing the alleged misrepresentations that Rocket saw "strong consumer demand," an "opportunity" to invest, and "growing" partner networks with the alleged disclosure that Rocket's projected "closed loan volume" was "between $82.5 billion and $87.5 billion", its projected "net rate lock volume" was between "$81.5 billion and $88.5 billion," and its projected "gain on sale margins" was between "2.65% to 2.95%"); *see also Goldman*, 594 U.S. at 121–23 (noting a "mismatch between the contents of the misrepresentation and the corrective disclosure" suggest no price impact). Second, as in *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc*., 77 F.4th 74, 81 (2d Cir. 2023), Defendants "severe[ed] the link between" the change in stock price and the alleged misrepresentations through their expert's testimony that no financial analysts referenced the alleged misrepresentations in any reports published throughout the proposed Class Period. *Shupe*, 752 F. Supp. 3d at 779–82.

In sum, this Court held that Shupe and SoCal could not rely on the *Basic* fraud-on-the-market theory to establish class-wide reliance on Farner's alleged misrepresentations.[2] *Id.* Because

---

[2] This Court also rejected Shupe and SoCal's reliance on another class-wide reliance presumption articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). There, the Supreme Court held that, in securities actions "involving primarily a *failure to disclose*, positive proof of reliance is not" necessary. *Affiliated Ute*, 406 U.S. at 153 (1972) (emphasis added).

individual questions of investor reliance dwarf any common questions shared by the proposed

Class, this Court concluded Rule 23(b)'s predominance requirement was not satisfied.

## 2.   **Rule 23(b)(3) Superiority**

Rule 23(b)(3)'s superiority requirement was also not satisfied, for the same reason. *Id.* at

785–86 ("Because individual questions of investor reliance predominate common questions shared

by the class, a class action is not the 'superior' method to adjudicate those putative class members'

claims."); *see also Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012) ("Where

many individual inquiries are necessary, a class action is not a superior form of adjudication."); *In*

*re Rail Freight Fuel Surcharge Antitrust Litig*., 292 F. Supp. 3d 14, 114 (D.D.C. 2017) ("[W]hen

individual issues predominate, a class action will be deemed inferior."), *aff'd sub nom. In re Rail*

*Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619 (D.C. Cir. 2019).

---

In 2008, the Supreme Court clarified that, under *Affiliated Ute*, an investor-plaintiff need not provide specific proof of reliance in a case alleging the "omission of a material fact by one with a duty to disclose" such fact to that specific plaintiff. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008). In cases such as this, where the alleged misrepresentations are a mix of both "misstatements and omissions," the Sixth Circuit has not yet "determined whether *Affiliated Ute* applies." *In re Acadia Healthcare Co., Inc*., No. 22-0506, 2023 WL 3620955, at *3 (6th Cir. May 23, 2023). But this Court has held that "the *Affiliated Ute* presumption 'does not apply'" in cases where plaintiffs' claims "'primarily' involve affirmative misstatements" as opposed to "failures to disclose." *Byrd v. ViSalus, Inc*., No. 17-CV-12626, 2018 WL 1637948, at *9 (E.D. Mich. Apr. 5, 2018) (quoting *Clayton v. Heartland Resources, Inc*., 754 F. Supp. 2d 884, 895 (W.D. Ky. 2010)).

Because Shupe and SoCal's allegations "primarily" involved affirmative misstatements— as opposed to omissions—this Court concluded that *Affiliated Ute* does not apply. *Shupe*, 752 F. Supp. 3d at 782–83 ("although Plaintiffs sprinkle the word 'omission' twelve times within their 146-page . . . Complaint, they expressly allege Defendant Farner 'falsely assured investors' through a series of 'false and misleading statements.' The first line of Plaintiffs' Amended Complaint reads: 'This case is brought to recover losses to investors based on Defendants' false and misleading statements to the market about Rocket's mortgage business during the Class Period.'" (internal citations omitted)).

### 3.    Rule 23(b)(3) Ascertainability

In addition to the express predominance and superiority requirements, Civil Rule 23(b)(3) imposes an implied ascertainability requirement under which "a class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 471 (6th Cir. 2017).

The proposed §20A Subclass—defined as those Rocket Class A common stock shareholders who traded "contemporaneously" with Defendant Gilbert's alleged March 29, 2021 insider trade—was not ascertainable. *See* FED. R. CIV. P. 23(a)(c)(5) (noting proposed subclasses are "treated as a class" for certification purposes and must separately comply with all requirements). Before the class certification stage, this Court explained that the Exchange Act "does not define 'contemporaneously'" but "most [courts] agree that a trade is made contemporaneously for the purposes of § 20A if it is made within a few days or the day after the alleged insider trade." *Shupe v. Rocket Companies, Inc*., No. 1:21-CV-11528, 2024 WL 416377, at *7, 10 (E.D. Mich. Feb. 5, 2024) (internal quotations omitted). Rather than clarify the specific days of trading relevant to the proposed Subclass, Plaintiffs resorted to using this undefined and ambiguous statutory term. *See* ECF No. 111 at PageID.8589–90. As this Court explained:

> Without specifically defining the temporal proximity between a putative Subclass member's trade and Defendant Gilbert's alleged insider trade, this Court cannot feasibly determine Subclass membership. Do Plaintiffs limit the Subclass to those investors who—like SoCal—traded on March 30, 2021? Do Plaintiffs intend to include those investors who traded Rocket stock on March 31, 2021? This Court does not know because Plaintiffs do not say. While this may seem trivial, Plaintiffs allege that over 100 million shares were traded throughout the relatively short two-month Class Period. Even a one-day difference in the Subclass definition necessarily impacts the claims of a significant number of investors.

*Shupe*, 752 F. Supp. 3d at 786 (internal citations omitted).

#### 4.   Rule 23(a) Adequacy

But the final nail in the proposed Class's coffin was Civil Rule 23(a) adequacy—or lack thereof. To satisfy this requirement, in addition to showing the adequacy of proposed class counsel, plaintiffs must show the proposed class representative will "adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). After reviewing the record, this Court concluded neither Shupe nor SoCal could.

#### a. Shupe

Start with Shupe. As this Court explained, district courts may consider "the proposed representative's honesty and trustworthiness when assessing adequacy." *Shupe*, 752 F. Supp. 3d at 792 (collecting cases). "However, to undermine adequacy, credibility concerns must be 'so sharp as to jeopardize the interests of absent class members.'" *Id.* (quoting *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012)). Shupe's credibility concerns were sufficiently sharp. Indeed, his "credibility for honesty and trustworthiness—as it directly relates to his trades of Rocket stock—ha[d] been significantly undermined in at least two ways." *Id.*

First, "Shupe misrepresented his investment prowess and failed to disclose earlier efforts to lead securities class actions." *Id.* "In August 2021, when he was bidding for lead plaintiff under the Private Securities Litigation Reform Act (PSLRA), . . . Shupe certified to this Court that (1) he 'ha[d] not sought to serve as a lead plaintiff or representative party in any class action under the federal securities laws filed during the last three years,' and (2) he was a sophisticated investor who began investing in the stock market in 2014." *Id.* (quoting ECF No. 15-2 at PageID.502). "But Shupe's January 2024 deposition revealed both statements to be untrue." *Id.* Indeed, "Shupe admitted during his deposition that he sought lead plaintiff status in a similar putative securities class action against . . . an electric vehicle company[] in April 2021, just four months before he

filed his declaration averring the opposite under penalty of perjury." *Id.* (citing ECF No. 120-29 at PageID.10006.) "Shupe's deposition also revealed that he began investing in the stock market as early as 2005, and does *not* consider himself a sophisticated investor." *Id.* (citing ECF No. 120-29 at PageID.9965, 9978).

Second, and "[m]ore concerningly," "Shupe did not disclose his March 2, 2021 sales of Rocket Class A Common Stock, nor the near $250,000 profit he received from these sales, until August 9, 2023—over a year after this Court relied on Shupe's alleged financial loss and appointed him lead plaintiff under the PSLRA." *Id.* (internal citations omitted). After reciting the relevant testimony, *id.* at 793–95, this Court concluded that, "[a]t best, Shupe's deposition testimony highlights his inability to remember important details central to this litigation and his own trades of Rocket stock. At worst, Shupe's testimony is indicative of obfuscation after deliberate, dishonest disclosures. His adequacy is undermined either way." *Id.* at 795.

### b. SoCal

Although admittedly a "close[r] call," this Court also concluded SoCal was an inadequate Subclass representative. *Id.* at 796. As this Court explained, "[a] proposed class—or subclass representative is inadequate if they have 'so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class.'" *Id.* (quoting *Davis v. Magna Int'l of Am., Inc*., No. 20-11060, 2023 WL 3729443, at *6 (E.D. Mich. Mar. 27, 2023)); *see also Davis*, 2023 WL 3729443, at *6 ("It is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless his ignorance unduly impacts his ability to vigorously prosecute the action."). Although "this is an incredibly low hurdle for proposed representatives to surmount," this Court concluded "SoCal has not cleared it." *Supe*, 752 F. Supp. 3d at 796, 798.

True, as this Court explained, "[o]n one hand, SoCal has diligently prosecuted this case since it became a named Plaintiff in 2024 and nothing suggests [its] interests are misaligned with those of the proposed Subclass." *Id.* at 796. But "[o]n the other hand, SoCal . . . fundamentally misunderstand[s] the claims of the Subclass it seeks to represent, conflating the Subclass's Section 20A contemporaneous trading claim with the general Section 10b misrepresentation claims asserted by the broader Class." *Id.* This misunderstanding permeated SoCal's deposition:

> **Defense Counsel**: And why do you believe [SoCal is] involved in [this] litigation[?]
>
> **SoCal's Representative**: Because some of the trades were made in close proximity to the *misrepresentations* made by Rocket executives.
>
> **Defense Counsel:** So you believe that SoCal is actually bringing claims based on alleged *misrepresentations* in this case?
>
> **SoCal's Representative**: Yes.
>
> **Defense Counsel**: Okay. So you believe that SoCal has been added as a named plaintiff with respect to—with respect to . . . the *misrepresentation* claims?
>
> **SoCal's Representative**: Yes.
>
> . . .
>
> **Defense Counsel**: Okay. And what obligations does SoCal have as the [named] plaintiff in the case?
>
> **SoCal's Representative**: To be the fiduciary to the class.
>
> **Defense Counsel**: And that's for the class that represents the *misrepresentation* claim?
>
> **SoCal's Representative**: Correct.

ECF No. 120-30 at PageID.10085–86 (emphasis added).

But "SoCal [was] incorrect. Plaintiffs specifically sought to add SoCal as a named plaintiff relative to [the] Section 20A contemporaneous trading claim because SoCal purchased its shares of Rocket stock "contemporaneously with" Defendant RHI's alleged insider trade." *Shupe*, 752 F.

Supp. 3d at 797. Both the operative Complaint and Renewed Motion for Class Certification sought

SoCal's appointment as the representative for the proposed Section 20A Subclass. ECF Nos. 109

at PageID.8423; 111 at PageID.8593. True, to some extent, SoCal—as the proposed Subclass

representative—is also a member of the putative Class which asserts broader fraudulent

misrepresentation claims. And both the misrepresentation and insider trading claims are premised

on the allegation that, during the Class Period, Rocket executives knew what the public did not:

that Rocket's profitability and viability were forecasted to decline. But, beyond these surface-level

similarities, SoCal's deposition suggested it does not know the fundamental differences between

the Subclass's contemporaneous trading claim and the Class's broader misrepresentation claims:

> **Defense Counsel**: Do you understand that there's an alleged insider trading claim?
>
> **SoCal's Representative**: Yes.
>
> **Defense Counsel**: And do you believe that SoCal is also the lead plaintiff for that claim, as well?
>
> **SoCal's Representative**: We're the lead plaintiff for the misrepresentation.
>
> **Defense Counsel**: But not the insider trading?
>
> **SoCal's Representative**: I guess, in my mind, they're the same thing.
>
> **Defense Counsel**: Okay. You think they're the same thing?
>
> **SoCal's Representative**: Yes.

ECF No. 120-30 at PageID.10086.

As this Court explained: "[t]hey are not the same thing." *Shupe*, 752 F. Supp. 3d at 797;

*see also Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 667 (E.D. Mich. 2023) (explaining

that, although insider trading and fraudulent misrepresentation claims are both actionable under

Section 10(b) of the Exchange Act and Rule 10b-5, both claims require proof of distinct elements).

In this case, the claims "involve different dates, different Defendants, and different fraudulent

conduct." *Shupe* 752 F. Supp. 3d at 798 (noting the "insider trading claim alleges that Defendant RHI—through Dan Gilbert—sold 20,200,000 shares of Rocket Class A common stock on March 29, 2021" but the "misrepresentation claims allege that Defendant Farner—as CEO of Rocket—made a series of material, fraudulent misrepresentations to the market on February 25, March 3, and March 11, 2021.").

Yet, at its deposition, SoCal further confused the claims and contended that the insider trading claims were premised—not on Dan Gilbert and RHI's alleged March 29, 2021 insider trade—but on Jay Farmer's alleged misrepresentations:

> **Defense Counsel**: [A]re you aware, in this case, [relevant to the insider trading claim,] what was alleged to have been material nonpublic information?
>
> **SoCal's Representative**: Yes
>
> **Defense Counsel**: And what were you told by counsel with respect to that?
>
> **SoCal's Representative**: That, on February 25, *[Jay] Farner made some misleading statements* to the public, and he tweeted them, and then, by May 5th, it became known that the statements were misleading.
>
> **Defense Counsel**: Yeah, and that Mr. Farner's statements to the public were material nonpublic information; that's what you understand?
>
> **SoCal's Representative**: That's what I[] understand, yes.
>
> . . .
>
> **Defense Counsel**: And do you have an understanding of what a 20A claim is?
>
> **SoCal's Representative**: Yes.
>
> **Defense Counsel**: And what is your understanding?
>
> **SoCal's Representative**: It's that the stocks were purchased within a short time of [the] *misleading statements* having been made.
>
> . . .

**Defense Counsel**: You said that SoCal is attempting to represent a class, a 20A class. Do you know what 20A is?

**SoCal's Representative**: It has to do with *misrepresentation*.

**Defense Counsel**: Does it have anything to do with any trades by any insiders?

**SoCal's Representative**: Yes . . . I do know. I just am . . . not able to immediately recollect everything.

. . .

**Defense Counsel**: [W]hat elements do you need to prove or win on that claim?

**SoCal's Representative**: [ ]That you were involved in a stock purchase relatively close to *misrepresentation claims*. . . .   It has to have proximity to a *misleading statement*[.]

**Defense Counsel**: Okay. So . . . SoCal has to have proximity to a false statement?

**SoCal's Representative**: Right.

**Defense Counsel**: Okay. And those are *Mr. Farner's statements*; is that what you're saying here?

**SoCal's Representative**: That's my understanding, yes.

ECF No. 120-30 at PageID.10087, 10103–05 (emphasis added).

SoCal's deposition revealed that it lacked a "basic understanding" and "general knowledge" about the Subclass's specific Section 20A claim. *Shupe*, F. Supp. 3d at 798 (quoting *Taylor v. CSX Transp., Inc*., 264 F.R.D. 281, 291 (N.D. Ohio 2007)). So this Court concluded it would not be an adequate Subclass representative. *Id.* (collecting cases).

In sum, this Court denied class certification because (1) individual questions of investor reliance predominate questions shared across the proposed Class; (2) relatedly, a class-action is not the superior way to adjudicate these claims; (3) the proposed Subclass was not ascertainable; and (4) both Shupe and SoCal were inadequate representatives. But declining class certification

did not end this litigation, which proceeded "with respect to" SoCal and Shupe's "individual claims." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 52 (E.D. Mich. 2016)

## C.

As noted, the pleadings since this Court denied class certification have been puzzling. On October 15, 2024, SoCal filed a Motion "For Leave to File a Renewed Motion for Class Certification, or in the Alternative, Limited Motion for Reconsideration Of the Court's Order Denying Class Certification of the Insider Trading Class." ECF No. 229. Abandoning the fraudulent misrepresentation claims of the larger Class, SoCal avers that, if granted leave, it would seek to certify a single class pursuing only the insider trading claims, Counts I and II. *See id.* SoCal would again seek to represent this new "narrowed class," which it avers would be more precisely defined and ascertainable. *See id.* at PageID.40680. Alternatively, if this Court declines to grant SoCal leave, it seeks partial reconsideration of this Court's Opinion and Order denying Subclass certification. *Id*. at PageID.40699–700.

Yet, on October 17, 2024, SoCal filed a Rule 23(f) petition in the Sixth Circuit Court of Appeals seeking permission to appeal this Court's decision declining Subclass certification. *See In re Carl Shupe, et al*., No. 24-105 (6th Cir. Oct. 17, 2024), ECF No. 1. Less than one week later, on October 23, 2024, SoCal filed a motion in the Sixth Circuit seeking to hold its 23(f) Petition in abeyance, pending this Court's decision on its two-part Motion, ECF No. 229. *In re Carl Shupe, et al*., No. 24-105 (6th Cir. Oct. 23, 2024), ECF No. 8. The Sixth Circuit has not yet addressed SoCal's motion to hold its Petition in abeyance.

Returning to district court, the Parties filed a stipulation on November 21, 2024. ECF No. 234. The stipulation provided some clarity. Shupe voluntarily dismissed all claims against Defendants, conceding that he would face "substantial difficulties proving" his fraudulent

misrepresentation claims. *See id.* at PageID.41191. Yet it remains unclear whether SoCal—the only remaining Plaintiff—still wishes to pursue the fraudulent misrepresentation claims (Counts III and IV) in its individual capacity, especially considering it would seemingly face the same "substantial difficulties" as Shupe in pursuing the fraudulent misrepresentation claims, and ir recently filed a motion contemplating a newly narrowed class, which would abandon these claims in the class context, ECF No. 229. Thus SoCal will be directed to file supplemental briefing to clarify this issue.

Nevertheless, this Court turns to consider SoCal's Motion for leave to file a renewed motion for class certification or, alternatively, limited reconsideration, ECF No. 229, and Defendants' Response, *see* ECF No. 232.

## II.

SoCal primarily seeks leave to file a "renewed and substantially narrowed motion for class certification." ECF No. 229 at PageID.40677. But no leave is necessary.

### A.

Civil Rule 23 expressly allows district courts to "alter[] or amend[]" any "order that grants or denies class certification," at any time "before final judgment." FED. R. CIV. P. 23(c)(1)(C). Indeed, this rule expressly permits plaintiffs "multiple bites" at the certification "apple." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476 (3d Cir. 2020); *accord Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991); *Cody v. City of St. Louis ex rel. Medium Sec. Inst.*, 103 F.4th 523, 529 (8th Cir. 2024); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 459 (N.D. Ohio 2014) (noting this rule "oblig[es]" courts "to reassess . . . class rulings as the case develops"); *Whittum v. Saginaw Cnty.*, No. 02-10313-BC, 2005 WL 3271810, at *6 (E.D. Mich. Nov. 22, 2005) ("There is no absolute prohibition to renewing a motion for class certification.").

And this second bite should be no harder than the first: courts should treat renewed motions for class certification the same as the initial motion and freshly analyze Civil Rule 23, rather than applying heightened reconsideration requirements. *Hargrove*, 974 F.3d at 47 (declining to impose heightened reconsideration requirements); *contra Garcia v. Shasta Beverages, Inc*., No. 219CV07798JWHAFMX, 2021 WL 1502917, at *2 (C.D. Cal. Feb. 25, 2021) ("A renewed motion for class certification is properly analyzed . . . as one for reconsideration").

But you can't bite an apple in the same place twice. Accordingly, "[d]istrict courts in this and other circuits have . . . declined to revisit the question of class certification where 'the underlying facts and circumstances pertinent to' the plaintiffs' claims had not changed 'in any way that would alter materially the reasoning on which the Court relied' when it last ruled on a motion to certify a class." *Savidge v. Pharm-save, Inc.*, No. 3:17-CV-186-CHB, 2025 WL 964446, at *12 (W.D. Ky. Mar. 31, 2025) (quoting *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 16-MD-02744, 2024 WL 1142348, at *4 (E.D. Mich. Mar. 15, 2024)) (collecting cases); *see also In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, No. 09 CIV. 832 MGC, 2012 WL 4435292, at *1 (S.D.N.Y. Sept. 26, 2012) (summarily denying motion for renewed class certification because the "pertinent" facts "ha[d] not materially changed, and plaintiff ha[d] not made a showing of changed circumstances" since initial certification denial); *Hossfeld v. Allstate Ins. Co.*, No. 20-CV-7091, 2024 WL 325337, at *5 (N.D. Ill. Jan. 29, 2024) ("Rule 23(c) does not authorize the relitigation of a class certification motion based on nothing more than dissatisfaction with an unfavorable class certification ruling.")

**B.**

So, SoCal does not need this Court's "leave" to file a renewed motion for class certification. It may simply file the motion. But it does so at its own peril.

Based on the information SoCal provides in its unnecessary Motion for Leave, the newly contemplated "narrowed" class is essentially the Subclass this Court already declined to certify, albeit with a slightly more ascertainable definition. *Compare* ECF No. 229 at PageID.40680 (contemplating a new proposed class of "all persons who purchased Rocket Class A Common Stock from March 29, 2021 through April 1, 2021") *with* ECF No. 111 at PageID.8589–90 (proposing Subclass of "All persons and entities . . . that purchased . . . Rocket Class A Common Stock contemporaneously with Defendant Gilbert's and Defendant RHI's sale of [the same] on March 29, 2021"). But even assuming this newly proposed class is sufficiently ascertainable, the class suffers at least one of the same fatal flaws as the rejected Subclass: SoCal's inadequacy.

This Court declined to certify the insider trading Subclass because SoCal, as readily apparent during its February 2024 deposition, knew nothing about insider trading claims or the underlying relevant facts. *See supra* Section I.B.4.b. It thought it was "named plaintiff with respect to the . . . fraudulent misrepresentation claims." ECF No. 120-30 at PageID.10085–86. It confused fraudulent misrepresentation with insider trading. *Id.* at PageID.10086. And it maintained that the insider trading claim was based—not on Defendant Gilbert's alleged March 29, 2021 insider trade—but on Defendant Farner's alleged fraudulent misrepresentations on February 25 and March 11, 2021. *See id.* at PageID.10103–04.

Rather than attempting to find another representative, or educating SoCal on the most basic facts and law underlying the insider trading claims of the class it sought—and again seeks—to represent, Plaintiff's Counsel argues that, by abandoning the fraudulent misrepresentations claims (Counts III and IV), SoCal could no longer confuse those claims with the insider trading claims (Counts I and II) pursued by the new "narrowed" class. *See* ECF No. 229 at PageID.40692–93. This makes no sense. Abandoning irrelevant claims does not magically cure SoCal's confusion

about relevant ones. In this way, the facts have not changed materially since this Court denied class certification in September 2024: SoCal still does not have sufficient knowledge about insider trading—both generally and as alleged in this specific case—to represent a class advancing such claims.

On this narrow issue, SoCal squarely seeks reconsideration and argues this Court imposed too high a standard when assessing its adequacy because the "Sixth Circuit has not placed emphasis on a class representative's personal knowledge of the case." ECF No. 229 at PageID.40693. But this Court has. *See Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2023 WL 3729443, at \*6 (E.D. Mich. Mar. 27, 2023). So have several district courts within the Sixth Circuit. *See, e.g.*, *In re AEP ERISA Litig.*, 2008 WL 4210352, at \*2 (S.D. Ohio Sept. 8, 2009); *Cassell v. Vanderbilt University*, 2018 WL 5264640, at \*5 (M.D. Tenn. Oct. 23, 2018); *Taylor v. CSX Transp., Inc*., 264 F.R.D. 281, 291 (N.D. Ohio 2007). So have numerous federal appellate courts. *See, e.g.*, *In re Suboxone*, 967 F.3d 264, 272 (3d Cir. 2020) ("For a class representative to be adequate, it must have a minimal degree of knowledge about the case."); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 61 (2d Cir. 2000) (same); *Monroe v. City of Charlottesville, Virginia,* 579 F.3d 380, 385 (4th Cir. 2009); *Berger v. Compaq Computer Corp*., 257 F.3d 475, 483 (5th Cir. 2001) (same, additionally noting that "the PSLRA raises the standard adequacy threshold" "in securities fraud class actions" by requiring they be "managed by active, able class representatives who are informed"). So have bedrock legal treatises. *See* NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 3:67 (6th ed. 2024) (collecting cases and noting "Courts across the circuits employ some variation" of the rule requiring adequate representatives to have "some" or a "minimal degree of knowledge" about the litigation and underlying facts).

Although SoCal correctly notes the Sixth Circuit has yet to explicitly join this consensus, ECF No. 229 at PageID.40693, the Sixth Circuit has not rejected it, either. Thus, SoCal has not shown that this Court "made a mistake" in concluding it was inadequate to represent the proposed Subclass. *See* E.D. Mich. LR 7.1(h)(2)(A). Instead, it merely repeats the same argument this Court already rejected as unpersuasive when denying class certification. *Compare* ECF No. 229 at PageID.40693–94 (arguing representatives need not have detailed "personal knowledge" of the case to be adequate) *with* ECF No. 135 at PageID.13332–33 (same). So reconsideration on this narrow issue is unwarranted.

In sum, although this Court has serious doubts that SoCal's newly proposed class will satisfy all certification requirements, SoCal does not need leave of Court to file a renewed motion for class certification under Rule 23.

### III.

But PSLRA lead plaintiff proceedings are necessary. As Defendants argue in response to SoCal's Motion for Leave, SoCal is *not* a lead plaintiff under the PSLRA and thus, since Shupe's withdrawal, "can[not] control" renewed class allegations and pleadings. ECF No. 232 at PageID.41060–61.

### A.

Some context is necessary, here. In the early 1990s, Elliott Weiss and John Beckerman—two law professors—drafted a law review article proposing procedural reform in securities class actions. *See* Elliott J. Weiss & John S. Beckerman*, Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 YALE L.J. 2053 (1995). Weiss and Beckerman observed that existing procedures to appoint lead plaintiffs "effectively precluded institutional investors from become actively involved in securities class

actions," which seemed "anomalous" because these investors "owned a majority of the stock of publicly held corporations and accounted for a larger portion of trading" than individual investors, and thus would—in theory—have greater incentives to retain and monitor class counsel, reduce agency costs, and pursue class claims. Elliott J. Weiss, *The Lead Plaintiff Provisions of the PSLRA After A Decade, or "Look What's Happened to My Baby*," 61 VAND. L. REV. 543, 544–48 (2008). So, their article proposed the following three reforms:

> (1) Whenever a purported securities class action was filed, courts should require the plaintiff to publish a public notice of filing and should give members of the purported class a reasonable period in which to apply to be named lead plaintiff;

> (2) Courts should appoint as lead plaintiff the plaintiff or applicant with the largest financial interest in the action, provided that applicant otherwise appeared to be qualified to serve as a class representative, and the court should then allow the lead plaintiff (subject to court approval) to select and retain lead counsel; and

> (3) Courts should protect applicants—in particular, institutional investors seeking to be appointed lead plaintiff—from harassment by allowing other plaintiffs or applicants to take discovery only where they could show that they had good cause to believe an applicant would not be a typical or adequate class representative.

*Id.* at 548.

As Weiss and Beckerman were editing their article, Congress was considering legislation to reform securities class actions to prevent frivolous filings. *Id.* Weiss and Beckerman sent their article to the Senate Banking Committee and watched as that Committee "reported out a bill that substantially mirrored [their] recommendations[.]" *Id.* at 549. The Senate "adopted the committee-approved bill without amending those" recommendations, and the conference committee approved a substantively similar bill with only "two minor modifications." *Id.* at 550. "Both houses of Congress passed the bill and, after President Clinton vetoed it, passed the bill again by supermajority vote." *Id.*

As enacted, the PSLRA lead plaintiff provisions require all plaintiffs who file putative securities class action complaints to publish notice, no later than 20 days after the complaint is filed, "in a widely circulated national business-oriented publication or wire service . . . advising members of the purported []class" about the "pendency of the action, the claims asserted therein, and the purported class period[.]" 15 U.S.C. § 78u-4(a)(3)(A). And "not later than 60 days after . . . notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* § 78u-4(a)(3)(A)(i)(II).

Thereafter, the Court must "appoint as lead plaintiff the member or members of the purported . . . class that the [C]ourt determines to be the most capable of adequately representing the interests of the class members[.]" *Id.* § 78u-4(a)(3)(B)(i). Consistent with Wiess and Beckerman's proposal, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the person who (1) "has either filed the complaint or made a motion in response to a notice," (2) "has the largest financial interest in the relief sought," and (3) "otherwise satisfies the requirements of Rule 23." *Id.* § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted "only upon proof" that the presumed most adequate plaintiff either (1) "will not fairly and adequately protect the interests of the class," or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

**B.**

In May 2022, this Court appointed Carl Shupe as the lead plaintiff in this litigation as required by the PSLRA. ECF No. 34. But, importantly, when Shupe was appointed lead Plaintiff, the operative complaint only alleged two fraudulent misrepresentation claims. *See* ECF No. 1 at PageID.26–28. The then-operative complaint, and the then-proposed class did *not* allege insider trading. *See id.*; *see also Shupe v. Rocket Companies, Inc.*, 601 F. Supp. 3d 214, 217 (E.D. Mich.

2022). Thereafter, as a result of the Parties' stipulation, ECF No. 36, Shupe amended his complaint, added Matthew Pearlman as a named—as opposed to lead—Plaintiff, and added the two insider trading claims. *See generally* ECF No. 39.

Months later, this Court granted Shupe's Motion to substitute named Plaintiff Pearlman with SoCal. *Shupe*, 2024 WL 416377. In so doing, this Court rejected Defendants argument that SoCal's substitution—at that juncture—would run afoul of the PSLRA or otherwise require republished notice or a new lead plaintiff proceedings. *Id.* at *6, n. 10. Indeed, this Court explained that SoCal was not attempting to *replace* lead Plaintiff Shupe, and that all named plaintiffs need not be designated lead plaintiffs for PSLRA purposes, so long as one is. *Id.*; *see also Hevesi v. Citigroup Inc*., 366 F.3d 70, 83 (2d Cir. 2004) (noting "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class" and "nothing in the text of the PSLRA indicates that every named plaintiff . . . must also . . . be appointed as a lead plaintiff).

But here's the problem. Shupe has now dismissed his claims and is no longer a party to these proceedings. ECF No. 234. Thus, as Defendants recognize, ECF No. 232 at PageID.41060, there is no PSLRA lead plaintiff in this case. So what's the solution?

The PSLRA provides little guidance. Indeed, "[t]he PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously [appointed] one withdraws" or, as here, voluntarily dismisses their claims. *In re Initial Pub. Offering Sec. Litig*., 214 F.R.D. 117, 120 (S.D.N.Y. 2002).

The Parties do not propose solutions, either. Defendants conclusively argue that SoCal "can do no more than 'proceed with [its] individual claim[].'" ECF No. 232 at PageID.41061 (quoting *In re Allergan PLC Sec. Litig*., 2020 WL 8620082, at *1 (S.D.N.Y. Dec. 7, 2020)). But the case

- 24 -

Defendants cite stands for the opposite proposition. In *In re Allergan*, after declining class certification because the proposed representative and lead plaintiff "proved itself not to be []adequate," the district court provided a thirty-day window for "someone [else] to step forward" and then appointed a new lead plaintiff under the PSLRA. 2020 WL 8620082, at *1–2.

Although extremely rare, nearly all federal courts faced with similar circumstances have reopened lead plaintiff proceedings.[3] *See, e.g. In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 120 (S.D.N.Y. 2002) (reopening lead plaintiff proceedings "[i]n the absence of any guidance in the PSLRA"); *In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2004 WL 742084, at *3 (N.D. Ill. Apr. 7, 2004) (providing 21-day window for putative class members to file motions to replace withdrawn lead plaintiff, noting that the reopening of PSLRA proceedings "permits th[e] court to make a reasoned analysis" in lieu of "summarily accept[ing] the submissions provided by lead counsel for the former lead plaintiff"); *In re Snap Inc. Sec. Litig.*, 394 F. Supp. 3d 1156, 1157 (C.D. Cal. 2019) (noting the court could not find "any case that squarely answers this question" but reopening PSLRA proceedings after lead plaintiff withdrew); *Reese v. Malone*, No. C08-1008 MJP, 2015 WL 1526567, at *3 (W.D. Wash. Apr. 3, 2015) ("[C]ourts generally require at least a modified renewed PSLRA[] selection process upon withdrawal of a lead plaintiff[.]"); *Almendariz v. OneSpan Inc.*, No. 20-CV-4906, 2021 WL 3043424, at *1 (N.D. Ill. Mar. 19, 2021) ("When a

---

[3] Some federal courts have refused to reopen PSLRA lead plaintiff proceedings and have instead appointed the next most adequate plaintiff from the group of original movants. *See, e.g.*, *In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2019 WL 2183448, at *1 (N.D. Cal. Apr. 8, 2019). This Court cannot do so, here, because SoCal seemingly wants to certify a narrowed class asserting just the insider trading claims, *see* ECF No. 239. But these claims were not alleged at the time Shupe was appointed lead Plaintiff, and were not included in the notice published to potentially interested plaintiffs. *See* ECF No. 10-3 at PageID.92–93. So this Court does know the "*next* most adequate plaintiff" to pursue the insider trading claims—precisely because it has never considered whether SoCal—or any other party—is *the* most adequate plaintiff to pursue these claims for the purposes of the PSLRA.

case no longer has any lead plaintiff, courts generally require at least a modified PSLRA selection process."); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-19 (9th Cir. 2000) ("Nothing in the statutory language [of the PSLRA] requires a specific reservation before a lead plaintiff designation can be re-opened. Quite the contrary[,] [i]t is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative and that a change might have to be made.").  SoCal—for its part—recognizes this precedent and notes that it "will follow whatever process the court proscribes," but suggests "reopening the [lead plaintiff] process is not ideal[.]" ECF No. 233 at PageID.41137.

This Court agrees that reopening the lead plaintiff process is not ideal. Indeed, if PSLRA lead plaintiff proceedings were reopened, SoCal would have difficulty securing such appointment unless it could demonstrate that it has gained sufficient knowledge and understanding about the insider trading claims the hypothetical narrowed class would seek to pursue. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) (requiring lead plaintiffs to satisfy "the requirements of Rule 23" and noting a plaintiff cannot be designated as the lead plaintiff if they "will not . . . adequately protect the interests of the class"). But such proceedings are necessary if SoCal wishes to file a renewed motion for class certification despite its pending 23(f) petition in the Sixth Circuit. That is a decision for SoCal—not this Court—to make.

At this juncture, because this Court declined class certification and the Sixth Circuit interlocutory appeal petition remains pending, this action only proceeds in SoCal's individual capacity. *See Machesney*, 317 F.R.D. at 52 (E.D. Mich. 2016)*.* PSLRA proceedings need not be reopened for SoCal's individual claims to proceed. But, because *Shupe* has since dismissed his claims, and because there has never been nationally published notice concerning the insider trading claims, if *SoCal* wishes to file a renewed motion for class certification on these specific claims,

it—or some other person or entity—must be appointed lead Plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(1) (noting PSLRA requirements "shall apply in each private action arising under this chapter that is brought as a . . . class action).

So, consistent with the PSLRA, before a renewed motion for class certification can be considered, SoCal should first publish a notice advising members of the proposed narrowed insider-trading class of (1) the pendency of the action, (2) the claims asserted therein, (3) the purported class period, and (4) their 60-day deadline from the date of publication to file a motion to serve as lead plaintiff. *Id.* § 78u–4(a)(3)(A)(i). The notice must be published "in a widely circulated national business-oriented publication or wire service" within 20 days of this Opinion & Order. *Id.* SoCal will also be directed to file proof of the notice on the docket. This Court will thereafter consider and resolve any motions to serve as lead Plaintiff, including—presumably— SoCal's. Only after a lead plaintiff is designated may that plaintiff file a renewed motion for class certification.

## IV.

Accordingly, it is **ORDERED** that Plaintiff Construction Laborers Pension Trust for Southern California ("SoCal")'s Motion for Leave to File a Renewed Motion for Class Certification, ECF No. 229, is **GRANTED** to the extent Plaintiff does not need leave of court to file a renewed class-certification motion.

Further, it is **ORDERED** that Plaintiff SoCal is **DIRECTED** to file, **on or before May 9, 2025**, supplemental briefing clarifying whether it wishes to pursue, in its individual capacity, the fraudulent misrepresentation claims (Counts III and IV) that Carl Shupe recently dismissed and that SoCal has abandoned in its contemplated renewed motion for class certification.

Further, it is **ORDERED** that, to the extent Plaintiff SoCal wishes to seek renewed class certification on the narrowed insider trading claims, it is **DIRECTED** to publish notice advising members of the proposed insider-trading class of (1) the pendency of the action, (2) the claims asserted therein, (3) the purported class period, and (4) their 60-day deadline from the date notice is published to file a motion to serve as lead plaintiff. *Id.* § 78u–4(a)(3)(A)(i). The notice must be published "in a widely circulated national business-oriented publication or wire service" **by May 9, 2025.** *Id.* If Plaintiff SoCal chooses to pursue the class claims and publishes such notice, it is **DIRECTED** to file proof of this notice on the docket.

**This is not a final order and does not close the above-captioned case.**

Dated: April 17, 2025                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge